FILED
FEBRUARY 28, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL LAUGHLIN and NICOLE LAUGHLIN, <br><br> Plaintiffs, <br><br> v. <br><br> BORDWOK ENTERPRISES, LLC, a Georgia limited liability company, and DANIEL LUCAS, <br><br> Defendants. | No. <br><br> **08 C 1217** <br><br> **JUDGE DER-YEGHIAYAN** <br> **MAGISTRATE JUDGE COX** |

## COMPLAINT

Plaintiffs MICHAEL LAUGHLIN, ("**Michael**") and NICOLE LAUGHLIN ("**Niclole**"), and each of them (collectively "**Plaintiffs**"), by their attorneys, John S. Letchinger, Timothy K. Klintworth, and Martin D. Snyder, state as follows for their Complaint against defendants BORDWOK ENTERPRISES, LLC, a Georgia limited liability company, ("**Bordwok**"), and DANIEL LUCAS ("**LUCAS**"), and each of them (collectively "**Defendants**"):

### PARTIES, JURISDICTION, AND VENUE

1.  Plaintiffs are individuals domiciled in Chicago, Illinois.

2.  Defendant Bordwok is a limited liability company organized under the laws of Georgia with its principal place of business located in Alpharetta, Georgia.

3.  Defendant Lucas is an individual domiciled in Georgia.

4.  This Court has subject matter jurisdiction over this action pursuant to 11 U.S.C. § 1332, in that this is a civil action in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

5. Defendants are subject to personal jurisdiction in Illinois pursuant to 735 ILCS 5/2-209 because both defendants are doing business in Illinois, and because the events or omissions giving rise to this claim either occurred in Illinois or were directed at Illinois, and because this action involves the ownership, use, or possession or real estate situated in Illinois.

6. Venue is proper in this judicial district pursuant to 28 U.S. C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this District, and a substantial part of property that is the subject of the action is situated in this District.

## BACKGROUND

7. On January 1, 2005, Bordwok was formed by Lucas, Michael, and others as a Georgia limited liability company. Bordwok is owned collectively by numerous owners, known as "Members." Presently there are 25 Members of Bordwok. Lucas and Michael are both Bordwok Members.

8. Bordwok is in the business of acquiring, developing, constructing, renting, and selling residential real estate property in Florida and in Illinois. Bordwok's Illinois business activities are conducted largely in Chicago.

9. Lucas is President and CEO of Bordwok. In addition to generally overseeing the entire operations of the company, Lucas is also primarily responsible for Bordwok's construction, development, and rental activities in Florida.

### Michael's Role at Bordwok

10. Michael is Bordwok's President of Chicago Construction. In that role, Michael is primarily responsible for Bordwok's construction, development, and sales activities in Chicago.

11. In his role at Bordwok, Michael has identified real estate opportunities for the company, arranged the purchase of the properties, and supervised the renovation or new

2

construction of the properties, all with the idea of re-selling the properties to third-parties at a profit for Bordwok.  In addition, Michael has sought and obtained construction projects for Bordwok that involved home renovations and additions whereby Bordwok earned general contracting fees.

12.     From January 2005 to April 2006, Michael performed his role for Bordwok on a part-time basis while holding down another job elsewhere.  In April 2006, however, Michael began to perform his job for Bordwok on a full time basis.

13.     When Michael agreed to start working full time for Bordwok, he and Lucas discussed the issue of Michael's compensation.  Lucas agreed on behalf of Bordwok that Bordwok would pay Michael $5,500 per month as a salary for his work.  In addition, the two agreed that Michael would be paid a bonus or commission based upon the profitability of the projects Michael personally acquired and managed for Bordwok.

14.     In and after April 2006, Michael and Lucas had continuing discussions as to the percentage of profits Michael would earn as a bonus or commission, but to date they have not reached an agreement on a firm number.  Michael's position has been and continues to be that a fair allocation would be 50% on development and sale properties, and 80% on fee-based projects acquired by him for Bordwok.

15.     Regardless, because Bordwok had not earned any profits on Chicago projects until recently, Michael continued to work for Bordwok without a final agreement on the amount of the bonus or commission he would make when Bordwok finally did earn a profit on a project.

## The Damen Building

16. The first construction project Bordwok undertook in Chicago was the purchase and conversion of a two-flat apartment building at 4317 North Damen Avenue into a single-family home ("**the Damen building**").

17. Michael and his wife, Nicole, jointly acquired the Damen building in their own names with the intention of renovating it, selling it, and directing the profit back to Bordwok. To that end, the Plaintiffs financed the purchase and construction of the Damen building in the amount of approximately $980,000.

18. Once the conversion of the Damen building was complete, however, Lucas suggested to the Plaintiffs that, instead of selling the Damen building to a third-party, they instead move in to the home themselves. Lucas reasoned that the home would not only be a suitable residence for the Plaintiffs and their family, it would stand as advertising to any future clients of Michael and Bordwok. Lucas further agreed to increase Michael's salary to cover the increased costs of the mortgage on the Damen building.

19. Therefore, the Plaintiffs moved into the residence and reached an agreement with Lucas and Bordwok. The plaintiffs agreed that they would receive full and unrestricted ownership of the Damen building in return for splitting with Bordwok the net proceeds realized on the job based upon a $1.2 million sale price. Because the total profit would have been approximately $220,000 in such a sale, the Plaintiffs anticipated that the agreement would result in a payment to Bordwok of approximately $110,000.

20. Recently, however, Lucas and Bordwok have signaled their intention to dishonor the agreement they had with the Plaintiffs for the purchase of the Damen building. Specifically, Lucas has demanded payment from the Plaintiffs of $300,000 to $350,000 to consummate the agreement.

21.     On February 26, 2008, the Plaintiffs received from counsel Bordwok indicating that Bordwok believes that it has no current agreement with the Plaintiffs pertaining to the Damen building, that it never agreed to allow the Plaintiffs to live there, and that the Plaintiffs must immediately pay to Bordwok the amount of $300,000.

### Bordwok's refusal to pay Bonus or Commission

22.     To date, Michael has acquired and managed two residential construction projects for Bordwok, wherein Bordwok earned approximately $50,000 in revenue.

23.     Despite Bordwok and Lucas' agreement to share the profits of such work with Michael, Bordwok has failed to pay any amounts to Michael from those projects.

24.     Moreover, Michael has, on behalf of Bordwok, acquired, managed, built, or renovated multiple projects in Chicago, including those at 2038 West Cullom, 4242 North Leavitt, 4028 North Oakley, and at State & Randolph.  While none of those properties has yet been sold to third-parties, some or all are currently listed or will soon be offered to sale to the public.  Based upon the proposed list prices of those properties, Michael expects that Boardwok will realize a profit of over $1,260,00 for those homes.

25.     Again, although Lucas and Bordwok agreed to compensate Michael for his work on those projects by paying him a portion of the profits, Lucas has flatly told Michael that Bordwok will not be paying Michael any percentage of the profits on any such job.

### Lucas and Bordwok's Defamatory Statements

26.     In addition to the recent controversy regarding the Damen building and the subject of Michael's compensation, Michael has come under increasing mistreatment by Lucas and Bordwok.

5

27. On multiple occasions in the past several months, Lucas, on his own behalf and on behalf of Bordwok has made defamatory, disparaging, and untrue statements regarding Michael and Michael's ability to do his job.

28. By way of example, Lucas made the following statements on the following occasions:

- On December 10, 2007, on a conference call with Rob Gavin, Chris Mitchell, Mike Laughlin, Jason Blair, Lucas falsely represented that Michael was "unorganized, irresponsible, and incompetent," that the company could not move on to fund other projects because $1 million of Bordwok's money was tied up in Chicago due to Michael's poor performance, and he told the others that "we can't account for every penny Mike has spent."

- On February 20, 2008, Lucas sent an e-mail message to Chris Mitchell, Rob Gavin, Luke Wilkins, and Jerry Lucas wherein he implied that Michael had mishandled the company's finances.

- On February 7, 2008, Lucas made a telephone call to Jason Blair and Luke Wilkins wherein he falsely claimed that Michael was jeopardizing the company's future by failing to turn over the Damen building.

- On repeated occasions, Lucas called Chris Mitchell and falsely told him, among other things, that Michael is incompetent, doing a bad job, is holding up further Boardwalk ventures, and is responsible for Bordwok being unable to launch the planned Bordwok Mortgage venture.

29. The point of these statements by Lucas was to discredit Michael so that Lucas and Bordwok could squeeze him out and continue to sell the remaining Chicago projects and other work without including Michael, so Bordwok would not have to compensate him.

### Michaels' demand for financial information from Bordwok

30. Due in part to Lucas' increasingly hostile attitude toward Michael, Michael began to have serious doubts about the fiscal health of Bordwok, of which Michael is an investor.

31. In addition, Lucas has informed Michael that, while the Chicago properties owned by Bordwok are doing well financially, the Florida properties are not faring as well. Upon

information and belief, Bordwok's Florida properties are decreasing rapidly in value, and foreclosures may be imminent. Indeed, Bordwok has recently informed Michael that they plan to cease payments on a property in Florida for which Michael and Nicole agreed on behalf of Bordwok to be responsible for the mortgage.

32. Concerned about the finances of the company, Michael requested of Lucas complete access to Bordwok's books so that he could evaluate the value of his investment.

33. Lucas and Bordwok, however, have steadfastly refused any such access.

## COUNT I
### (Michael v. Defendants -- Defamation per se)

34. Michael incorporates paragraphs 1 through 32 of this Complaint and re-alleges them for this paragraph of Count I of the Complaint as though fully set forth herein.

35. The false statements about Michael made by Lucas were made on his own behalf and on behalf of Bordwok.

36. The statements made by Lucas impugned Michael's professional integrity, imputed an inability to perform or a lack of integrity in the discharge of his duties at Bordwok, and imputed a lack of ability on his part in his trade.

37. The statements were intended to and did in fact proximately cause harm to Michael's reputation and standing among others in the community. As a result, Michael has suffered pecuniary damages.

WHEREFORE, Michael Laughlin prays that this Court enter a judgment in its favor and against the defendants on Count I of the Complaint in an amount exceeding $75,000, plus interest and costs of suit.

The plaintiffs demand trial by jury.

## COUNT II

**(Plaintiffs v. Defendants – Breach of Contract – Damen Building)**

38.  The Plaintiffs incorporate paragraphs 1 through 32 of this Complaint and re-allege them for this paragraph of Count II of the Complaint as though fully set forth herein.

39.  The Plaintiffs and Defendants entered a valid and enforceable contract by virtue of their agreement to transfer to the Plaintiffs all rights in the Damen building in return for splitting the profits from an assumed sale price of $1.2 million.

40.  Defendants, however, have breached or have anticipatorily breached that contract by the position they have taken inconsistent with that contract; specifically, their demand for additional compensation and their denial that any such agreement ever existed.

41.  The Plaintiffs have been damaged and will continue to be damaged by the Defendants' breach or anticipatory breach of the contract.

WHEREFORE, the Plaintiffs pray that this Court enter a judgment in their favor and against Defendants on Count II of the Complaint in an amount exceeding $75,000, plus interest and costs of suit.

The plaintiffs demand trial by jury.

## COUNT III

**(Michael v. Defendant -  Bonus & Commissions)**

42.  Michael incorporates paragraphs 1 through 32 of this Complaint and re-alleges them for this paragraph of Count III of the Complaint as though fully set forth herein.

43.  Michael and the Defendants entered into a valid and enforceable contract by virtue of their agreement to compensate Michael with Bonuses or Commissions related to his work on behalf of Bordwok.

44. Defendants, however, have breached or anticipatorily breached that contract by failing to pay Michael bonuses and commissions owed to him, and by refusing to pay all future such amounts owed to him.

45. As a direct and proximate result of Defendants' breach, Michael has been damaged in an amount equaling at least $680,000.

WHEREFORE, Michael Laughlin prays that this Court enter a judgment in its favor and against the defendants on Count III of the Complaint in an amount exceeding $75,000, plus interest and costs of suit.

The plaintiffs demand trial by jury.

## COUNT IV

**(Michael v. Defendants – Quantum Meruit – Bonuses & Commissions)**

46. Michael incorporates paragraphs 1 through 32 of this Complaint and re-alleges them for this paragraph of Count IV of the Complaint as though fully set forth herein.

47. This Count is pled in the alternative.

48. Michael has earned the right to compensation for the projects for Bordwok on which he has worked above his $5500 per month salary. Such compensation was specifically agreed by all parties to be a part of his compensation for working for Bordwok.

49. Although Michael and Defendants never agreed on a specific amount of sucjh compensation, Michael is nevertheless entitled to payment of it, as he has clearly conferred a benefit upon Bordwok by virtue of his work, and under the circumstances, it would be unjust for Bordwok to retain that benefit without fair compensation.

50. As a direct and proximate result of Defendants' unjust retention of the compensation owed to him, Michael has been damaged in an amount equaling at least $680,000.

WHEREFORE, Michael Laughlin prays that this Court enter a judgment in its favor and against the defendants on Count IV of the Complaint in an amount exceeding $75,000, plus interest and costs of suit.

## COUNT V

### (Michael v. Defendants – Constructive Trust)

51.     Michael incorporates paragraphs 1 through 32, and 42 through 50 of this Complaint and re-alleges them for this paragraph of Count V of the Complaint as though fully set forth herein.

52.     In light of Defendants' actions in wrongly retaining the Bonuses and Commissions that are clearly owed to Michael, the Court should not allow Defendants to realize the full profits of the various projects outlined herein without paying those amounts to Michael. Any such profits Defendants receive that are owed to Michael are wrongfully in their hands.

53.     Consequently, this Court should impose a constructive trust in favor of Michael and against Defendants for all amounts (1) currently possessed by Defendants but owed to Michael in Bonuses and Commissions, and (2) realized by Defendants in the future from the sale of any properties for which Michael is owed a Bonus or Commission by Defendants.

WHEREFORE, Michael Laughlin prays that this Court enter a judgment in its favor and against the defendants on Count V of the Complaint, and that it impose a constructive trust in favor of Michael and against Defendants for all amounts (1) currently possessed by Defendants but owed to Michael in Bonuses and Commissions, and (2) realized by Defendants in the future from the sale of any properties for which Michael is owed a Bonus or Commission by Defendants.

## COUNT VI

**(Michael v. Defendants – Accounting)**

54. Michael incorporates paragraphs 1 through 32 of this Complaint and re-alleges them for this paragraph of Count VI of the Complaint as though fully set forth herein.

55. Michael is an investor, part owner, and Member of Bordwok.

56. In light of the questionable financial situation in which Bordwok presently finds itself, Michael has demanded access to Bordwok's financial information.

57. Michael's demand for financial information access have been flatly refused by Lucas.

58. Michael therefore requests that this Court enter an order compelling Defendants to make an Accounting to Michael and all other Members who request it of all of Bordwok's financial information as soon is practicable.

WHEREFORE, Michael Laughlin prays that this Court enter a judgment in its favor and against the defendants on Count V of the Complaint, and that it enter an order compelling Defendants to make an Accounting to Michael and all other Members who request it of all of Bordwok's financial information as soon as practicable.

Dated:  February 28, 2008

                              MICHAEL & NICOLE LAUGHLIN


                        By:     s/ Martin D. Snyder
                              One of their Attorneys


John S. Letchinger
Martin D. Snyder
WILDMAN, HARROLD, ALLEN & DIXON LLP
225 West Wacker Drive
Chicago, Illinois 60606-1229
(312) 201-2000

(312) 201-2500 (fax)

*Attorneys for Plaintiffs*
  *Michael & Nicole Laughlin*

Case 1:08-cv-01217   Document 1   Filed 02/28/2008   Page 12 of 12