IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL LAUGHLIN and<br>NICOLE LAUGHLIN,<br><br>    Plaintiffs,<br><br>v.<br><br>BORDWOK ENTERPRISES, LLC,<br>A Georgia limited liability company, and<br>DANIEL LUCAS,<br><br>    Defendants. | No. 08-C-1217<br>Judge Der-Yeghiayan<br>Magistrate Judge Cox |

## DEFENDANTS' MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Bordwok Enterprises, LLC ("Bordwok") and Daniel Lucas ("Mr. Lucas") ("collectively referred to as "Defendants") move the Court to dismiss all counts in the Complaint with prejudice.

Plaintiff Michael Laughlin ("Mr. Laughlin") is a member of Bordwok, serves as an officer of a Bordwok subsidiary, and has worked for Bordwok. Mr. Laughlin claims that his boss defamed him while discussing his job performance. And although he admits that he had an agreement to receive a certain amount of compensation, he now claims that he is entitled to more. Finally, he claims that Bordwok breached an alleged oral agreement to "allow" him to move into a house, despite the fact that Mr. Laughlin is currently living in that house and has failed to allege that Bordwok has breached any specific contractual obligation under the alleged oral agreement. Not content to merely sue Bordwok for these grievances, Mr. Laughlin also sued Mr. Lucas, Bordwok's President and CEO, and then asserted all of his claims against "Defendants." However, Mr. Laughlin did not allege any grounds for holding Mr. Lucas individually liable.

The problem with the Complaint is that Mr. Laughlin's alleged grievances, even if true, do not give rise to a legal right to recovery. And this not a case where a plaintiff has merely provided sketchy factual allegations in support of legal claims. This is a case where the allegations simply do not give rise to cognizable causes of action. Accordingly, Defendants respectfully ask the Court to dismiss all counts in the Complaint, with prejudice.

## I. THE ALLEGATIONS IN THE COMPLAINT

### A. Mr. Laughlin Claims That He Is Entitled To An Unknown Amount Of Additional Compensation.

Bordwok is a Georgia Limited Liability Company with its principal place of business in Georgia. (Complaint, ¶ 2). Defendant Daniel Lucas ("Mr. Lucas") is the President and CEO of Bordwok. (Complaint, ¶ 9). Mr. Laughlin is a member of Bordwok, has served as an officer of a Bordwok subsidiary, and has worked for Bordwok. (Complaint, ¶¶ 7, 10, 13). Mr. Laughlin had an oral agreement with Bordwok pursuant to which Bordwok paid him $5,500.00 a month for his services. Mr. Laughlin alleges that Bordwok also agreed to pay him a "bonus or commission." (Complaint, ¶ 13). Mr. Laughlin does not specify whether the alleged oral agreement was for a bonus or for a commission. Mr. Laughlin admits that the parties never reached "a final agreement on the amount of the bonus or commission ...." (Complaint, ¶ 15).

Mr. Laughlin does not allege that his alleged agreement with Bordwok was for any particular period of time or that Bordwok failed to pay him the $5,500.00 a month pursuant to the alleged agreement.

### B. The Damen House

Mr. Laughlin alleges that he and his wife, Plaintiff Nicole Laughlin ("Ms. Laughlin"), acquired a two-flat apartment building in Chicago (the "Damen House"). (Complaint, ¶ 17). Mr. Laughlin intended to renovate the house, sell it, and direct the profit to Bordwok. (Complaint, ¶ 17). However, once the renovation was complete, Mr. Lucas allegedly suggested to Mr. Laughlin that the Laughlin family move into the Damen House. (Complaint, ¶ 18). Mr. Laughlin alleges that he reached an agreement with Bordwok whereby he and his family would move into the Damen House, and Mr. Laughlin would pay Bordwok "approximately $110,000." (Complaint, ¶ 19). Mr. Laughlin and his family moved into the Damen House. (Complaint, ¶ 19). Mr. Laughlin does not allege that he made any payments to Bordwok. Mr. Laughlin alleges that Bordwok stated to Mr. Laughlin that Mr. Laughlin should pay Bordwok between $300,000 and $350,000. (Complaint, ¶ 20). Mr. Laughlin alleges that Bordwok stated to him that Bordwok had never agreed that he could move into the house. (Complaint, ¶ 21). Mr. Laughlin fails to allege that Bordwok had any obligations under the alleged oral agreement with respect to the Damen House or that Bordwok breached any specific contractual obligation under the alleged oral agreement.

2

### C. The Alleged Defamation

Finally, Mr. Laughlin seeks to recover damages from Bordwok and Mr. Lucas based upon allegations that Mr. Lucas, Bordwok's President and CEO, made critical remarks concerning Mr. Laughlin's job performance. The following is a verbatim list of the alleged defamatory statements from the Complaint:

> On December 10, 2007, on a conference call with Rob Gavin, Chris Mitchell, Mike Laughlin, Jason Blair, Lucas falsely represented that Michael was "unorganized, irresponsible, and incompetent," that the company could not move on to fund other projects because $1 million of Bordwok's money was tied up in Chicago due to Michael's poor performance, and he told the others that "we can't account for every penny Mike has spent."
>
> On February 20, 2008, Lucas sent an e-mail message to Chris Mitchell, Rob Gavin, Luke Wilkins, and Jerry Lucas wherein he implied that Michael had mishandled the company's finances.
>
> On February 7, 2008, Lucas made a telephone call to Jason Blair and Luke Wilkins wherein he falsely claimed that Michael was jeopardizing the company's future by failing to turn over the Damen building.

On repeated occasions, Lucas called Chris Mitchell and falsely told him, among other things, that Michael is incompetent, doing a bad job, is holding up further Bordwok ventures, and is responsible for Bordwok being unable to launch the planned Bordwok Mortgage venture. (Complaint, ¶ 28).

## II.   ARGUMENT AND CITATION OF AUTHORITY

A claim that is not supported by factual allegations sufficient to plausibly suggest a right to relief should be dismissed. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). A formulaic recitation of the elements does not suffice; a plaintiff must provide sufficient factual allegations to raise a right to relief on each claim above a speculative level. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). A claim that is not described in sufficient detail to give a defendant fair notice of the claim and the grounds upon which it rests should also be dismissed. *Concentra Health Servs., Inc.*, 496 F.3d at 776.

### A.   Mr. Laughlin Failed To State A Claim For Defamation.

#### 1.   The Alleged Defamatory Statements Are Non-Factual And Protected By The First Amendment.

To prove a claim of defamation, a plaintiff must show that the defendant made a false statement concerning the plaintiff, there that was an unprivileged publication of the defamatory

3

statement to a third party by the defendant, and that the plaintiff suffered damage as a result of the publication of the defamatory statement. *Skolnick v. Correctional Medical Servs., Inc.*, 132 F. Supp. 2d 1116, 1123 (N.D. Ill. 2001).

Defamatory statements may be actionable per se or actionable per quod. *Id.* In this case, Mr. Laughlin is proceeding solely on a theory of defamation per se.

Illinois law recognizes four categories of defamation per se: 1) words that impute the commission of a criminal offense; 2) words that impute infection with a loathsome communicable disease; 3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; or 4) words that prejudice a party or impute a lack of ability, in his or her trade. *Id.*

However, statements that may be defamatory per se are nonetheless non-actionable as a matter of law if they are an expression of a subjective view, rather than a claim by the speaker of objectively verifiable facts. *Drury v. Sanofi-Synthelabo, Inc.*, 292 F. Supp. 2d 1068, 1070 (N.D. Ill. 2003). *See also Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993) (expression of subjective viewpoints non-actionable); *Quilici v. Second Amendment Foundation*, 69 F.2d 414, 418 (7th Cir. 1985) ("expression of opinion can never be so false as to constitute a false statement of fact").[1]

Courts consider several factors in determining whether a statement is actionable: 1) whether the statement has a precise and readily understood meaning; 2) whether the statement is objectively verifiable as true or false; and 3) whether the statement's literary or social context signals that it has factual content. *Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825, 840 (Ill. 2006).

In applying this test, courts have consistently ruled that statements that are identical or highly similar to the statements at issue in this case are non-actionable opinions. For example, in *Doherty v. Kahn*, 682 N.E.2d 163 (Ill. Ct. App. 1997), the court found that statements made by

---

[1] In a recent decision, the Illinois Supreme Court noted that it had never expressly determined whether the privilege that the First Amendment affords to non-factual statements extends to statements made by one private party about another on a matter of purely private concern. *Imperial Apparel, Ltd. v. Cosmos's Designer Direct, Inc.*, No. 103331, 2008 WL 351675, at *9 (Ill. Feb. 7, 2008). Although the issue was not before the court in *Imperial Apparel*, the Illinois Supreme Court gave every indication that it would hold that the privilege was applicable to private statements when the issue was properly before it. *Id.* The court found that recognition of the privilege served the goals of consistency, certainty, and equal treatment under the laws. *Id.* Both this Court and the Illinois Court of Appeals have consistently applied the privilege in all contexts, including to non-factual statements made by one private party about another on a matter of private concern. *Drury v. Sanofi-Synthelabo Inc.*, 292 F. Supp. 2d 1068 (N.D. Ill. 2003); *Quinn v. Jewel Food Stores, Inc.*, 658 N.E.2d 1225 (Ill. Ct. App. 1995).

the plaintiff's former employer to clients to be non-actionable. The statements at issue included assertions that plaintiff was "incompetent," "lazy," dishonest," and "could not do his job ...." 682 N.E.2d at 168.

In another illustrative case, *Hopewell v. Vitullo*, 701 N.E.2d 99 (Ill. Ct. App. 1998), the plaintiff brought a defamation claim against a law firm and one of its partners based upon an allegation that the partner had stated that the plaintiff had been "fired for incompetence." The court concluded that the statement was not actionable. 701 N.E.2d at 104. *See also Sullivan v. Conway*, 157 F.3d 1092, 1097 (7th Cir. 1998) (statement that attorney was "a very poor lawyer" is non-actionable subjective opinion).

The determination of whether alleged defamatory statements are actionable is a legal one that may be resolved on a motion to dismiss. *See, e.g., Drury*, 292 F. Supp. 2d at 1071 (granting motion to dismiss defamation claims on ground statements were non-actionable opinion).

In this case, the alleged defamatory statements are non-actionable subjective opinions as opposed to objective facts. The statements are identical or similar to statements that have been found to be non-actionable. Further, as demonstrated below, an application of the relevant factors confirms that the statements are non-actionable.

First, the statements do not have a precise meaning. In *Hopewell*, the court concluded that the term "incompetent," although easily understood, lacked a precise meaning because of its broad scope. 701 N.E.2d at 104. In this case, all of the alleged statements are similarly broad and general in nature.

Second, the statements are not objectively verifiable as true or false. How could you objectively verify whether Mr. Laughlin is unorganized? How could you objectively verify whether Mr. Laughlin was jeopardizing the company's future? These are purely subjective characterizations that are incapable of factual verification. As in *Hopewell*, any attempt to prove or disprove any of the alleged defamatory statements in this case "would entail an endless analysis of each and every fact connected with [plaintiff's job performance]." 701 N.E.2d at 104. *See also Sullivan*, 157 F.3d at 1097 (noting that it would be unmanageable to ask a court to determine whether an attorney was a "poor lawyer"). This is a key factor as the inability to objectively verify the alleged defamatory statements demonstrates that the statements lack an underlying factual basis. 701 N.E.2d at 105.

Finally, the statements' context demonstrates that they are subjective opinions. The alleged statements in this case were made by the President and CEO of Bordwok with respect to Mr. Laughlin's performance of job-related responsibilities for Bordwok. By Mr. Laughlin's own

5

allegations, the statements were made to a small group of people. Courts have consistently found such statements regarding job performance to be non-actionable. *See Quinn v. Jewel Food Stores, Inc.*, 658 N.E.2d 1225, 1231 (Ill. Ct. App. 1995). *See also Murphy v. Cadillac Rubber & Plastics, Inc.*, 946 F. Supp. 1108, 1123 (W.D.N.Y. 1996) ("statements regarding an employee's work performance made within the context of an employment context have generally been characterized as nonactionable expressions of opinion"). This is not surprising. An evaluation of how a particular person does his or her job is a classic exercise in subjectivity. Further, a supervisor may have a duty to render an opinion of an employee's skills and abilities. In *Naeemullah v. Citicorp Servs., Inc.*, 78 F. Supp. 2d 783, 793 (N.D. Ill. 1999), this Court found that statements by an employee's supervisor that the employee had interpersonal skill problems and had run-of-the-mill professional abilities to be non-actionable opinion. The Court noted that the supervisor had the right and duty to express his honest opinions of the plaintiff's professional abilities and skills. 78 F. Supp. 2d at 793. In this case, all of the alleged defamatory statements relate directly to Mr. Laughlin's job performance for Bordwok, were made by a person with a duty to evaluate his job performance, and were allegedly made to a small group of people. Thus, the context of the statements demonstrates that the statements were subjective evaluations of a person's job performance.

Accordingly, the application of the three factors to Mr. Laughlin's allegations in this case demonstrates that the alleged defamatory statements are purely subjective expressions of opinion that are non-actionable. Accordingly, Count I of the Complaint should be dismissed.

### 2.  Mr. Laughlin Failed To Allege The Actual Defamatory Statements.

Federal notice pleading standards require that a plaintiff set forth the precise statements that are alleged to be defamatory. *Levitt v. S.C. Food Serv., Inc.*, 820 F. Supp. 366, 367-68 (N.D. Ill. 1993). This is especially true when a plaintiff alleges defamation per se, as opposed to defamation per quod. *Id.*

In his Complaint, Mr. Laughlin sets forth four instances in which Mr. Lucas allegedly made defamatory comments. With respect to the first instance, Mr. Laughlin put the alleged defamatory statements in quotation marks. (Complaint, ¶ 28). However, Mr. Laughlin did not put any of the other alleged statements within quotation marks. This suggests that the only alleged statements that are set forth verbatim are those set forth in quotes with respect to the first instance. Accordingly, the defamation claim should be dismissed with respect to the remaining alleged statements. Further, there is no doubt that the alleged statements made in a February 20,

2008 electronic mail message are not precisely set forth as required. In this email, Mr. Laughlin alleges that Mr. Lucas "implied" that Mr. Laughlin had mishandled company finances in this email. (Complaint, ¶ 28). Mr. Laughlin did not attach the actual email nor did he set forth the exact language contained in the actual email. He merely alleged that an implication was made in the email. This is not sufficient. 820 F. Supp. at 368 (inferences as to the content of alleged defamatory statements are not sufficient). The defamation claim should be dismissed with respect this alleged statement.

    3. **Alleged Statements Capable Of An Innocent Construction Are Not Actionable.**

If a statement taken in context is reasonably capable of a non-defamatory interpretation, the court should so construe it. *Skolnick*, 132 F. Supp. 2d at 1123. This higher standard is necessary because of the presumption of damages in per se actions. *Id.* at 1123-24. Illinois courts apply this doctrine to statements made regarding a person's job performance. *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1302-03 (Ill. 1996). Statements asserting that a person did not meet job expectations, exhibited a lack of achievement, had problems getting along with others, was uncooperative, refused to complete a task, and did not have the qualifications needed to achieve the objectives of the profession have all been found to be subject of an innocent construction. *Id.* (collecting cases). Whether a statement is capable of an innocent construction is a question of law for the court. *Quinn v. Jewel Food Stores, Inc.*, 658 N.E.2d 1225, 1232 (Ill. Ct. App. 1995).

In this case, the alleged statement that "we can't account for every penny Mike has spent" is reasonably subject to an innocent construction. (Complaint, ¶ 28). There could be many possible reasons why Bordwok could not account for every penny that Mr. Laughlin has spent that would not imply defamatory characterizations. The statement could be reasonably interpreted as an expression by Bordwok's President and CEO that the company needs to do a better job at reconciling spending. And surely a company's CEO is entitled to speak about the need to reconcile spending without incurring personal liability for defamation. Accordingly, the defamation claim should be dismissed with respect to this alleged statement.

B. **Plaintiffs Failed To State A Claim For Breach Of Contract With Respect To The Damen House.**

The essential elements of a breach of contract claim are 1) offer and acceptance; 2) consideration; 3) definite and certain terms; 4) breach; and 5) damages. *Burke v. Lakin Law Firm*, No. 07-cv-0076, 2008 WL 64521, at *2 (S.D. Ill. Jan. 3, 2008). The failure to allege the

7

essential elements of a breach of contract claim warrants dismissal of the claim. *Id.* A formulaic recitation of the elements does not suffice; a plaintiff must provide sufficient factual allegations to raise a right to relief on the claim above a speculative level. *Bell Atlantic Corp.*, 127 S. Ct. at 1965. As demonstrated below, Plaintiffs have failed to properly allege the required elements of a breach of contract claim.

### 1. The Alleged Contract Lacks Mutuality And Consideration.

An enforceable contract requires mutuality of obligation whereby both parties are bound to perform. *Sonnneblick-Goldman Corp. v. Murphy*, 420 F.2d 1169, 1173 (7th Cir. 1970). In this case, the Complaint contains no allegation as to Bordwok's obligations under the alleged Damen House contract and no allegation as to Mr. Lucas's obligations under the alleged Damen House contract. Neither Bordwok nor Mr. Lucas are obligated to do anything under the alleged oral contract. Accordingly, the claim for breach of the Damen House contract should be dismissed.

### 2. The Alleged Contract Is Fatally Indefinite.

A related deficiency in the alleged contract is the fact that it lacks definite and certain terms. A contract is unenforceable if the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken. *Academy Chicago Publishers v. Cheever*, 578 N.E.2d 981, 984 (Ill. 1991). The nature of the alleged Damen House contract is a mystery. Plaintiffs allege that they were to split the profits from a sale of the house at some unknown time in the future. That is all they allege. There are no allegations as to what Plaintiffs were obligated to do and no allegations as to what Bordwok and Mr. Lucas were obligated to do. There are no allegations as to the Plaintiffs' damages in the Complaint other than the conclusory statement that they were damaged. Because there is no basis for deciding whether the alleged agreement has been kept or broken, the claim must be dismissed.

### 3. Plaintiffs Failed To Allege A Breach Of The Alleged Contract.

Plaintiffs allege that Defendants "have breached or anticipatorily breached" the alleged contract. (Complaint, ¶ 40). However, there is no allegation that Bordwok or Mr. Lucas failed to perform a contractual obligation under the alleged contract. Instead, Plaintiffs allege that Defendants "breached or anticipatorily breached that contract by the position that they have taken inconsistent with that contract …." (Complaint, ¶ 40). However, as shown below, as a matter of law, taking an inconsistent position with respect to a contract does not constitute a breach of contract or an anticipatory repudiation.

An anticipatory repudiation requires an allegation and proof that the defendant unequivocally announced or otherwise manifested an intent to breach a contractual obligation. *In re Kmart*, No. 02B2474, 2007 WL 4556991, at *4 (Bankr. N.D. Ill. Nov. 20, 2007). Because the doctrine of anticipatory repudiation represents a harsh remedy, the requirement that the repudiating statement be clear and absolute is a strict one. *LAK, Inc. v. Deer Creek Enterprises*, 976 F.2d 328, 331 (7th Cir. 1992). Stating that a party has repudiated a contract does not make it so. *Commonwealth Edison Co. v. Decker Coal Co.*, 612 F. Supp. 978, 982 (N.D. Ill. 1985). A demand for more money than due under a contract does not constitute an anticipatory repudiation. *P & L Contractors, Inc. v. American Norit Company*, 5 F.3d 133, 139 (5th Cir. 1993) (citing 4 Arthur L. Corbin, Corbin on Contracts § 973 at 910-11).

In this case, Plaintiffs offer two alleged breaches or instances of anticipatory repudiation. First, they allege that Bordwok demanded more money from Plaintiffs than was due under the alleged contract. This is not a breach of an alleged contractual obligation and as noted above, such a demand would not constitute an anticipatory repudiation. Second, Plaintiffs allege that Defendants denied that it had an agreement with Plaintiffs regarding the Damen House. This is not a breach of a contractual obligation. Further, it is not an anticipatory repudiation because Defendants are not alleged to have refused to perform a contractual obligation. There is no statement of future action or inaction with respect to an obligation of Bordwok or Mr. Lucas under the terms of the alleged contract. Accordingly, Plaintiffs' claim for breach of contract with respect to the Damen House should be dismissed.

**C.   Plaintiffs Failed To State A Claim For Breach Of Contract For Bonus Or Commission.**

An enforceable agreement as to a bonus or commission requires agreement as to an amount or at the very least, as to a formula for calculating an amount. *See Academy Chicago Publishers*, 578 N.E.2d at 984 ("if the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract"); *Collins v. Associated Pathologists, Ltd.*, 676 F. Supp. 1388, 1409 (C.D. Ill. 1987) (court would be unable to enforce a contractual term requiring payment of a bonus in the absence of evidence showing "that a predetermined formula was in place which established a means of calculating the amount of bonuses ...."); *Krause v. Royal Metal Mfg. Co.*, 162 Ill. App. 458 (Ill. Ct. App. 1911) (alleged promise of additional compensation in the form of a bonus, in order to be enforceable, must be clear, explicit and based upon a consideration); *Lal v. Naffah*, 500 N.E.2d 699, 701 (Ill. Ct. App.

9

1986) (alleged oral agreement for additional compensation based upon unknown share of profits of medical practice unenforceable).

In Count III of his Complaint, Mr. Laughlin claims that "Defendants" "breached or ancipatorily breached" a contract allegedly formed with respect to the payment of a bonus or commission. (Complaint, ¶ 44). As a result of this breach, Mr. Laughlin claims that he has been damaged in an amount "equaling at least $680,000." (Complaint, ¶ 45). There is nothing in the Complaint to suggest how Mr. Laughlin arrived at this number; indeed, Mr. Laughlin specifically alleged that the parties never reached an agreement as to the amount of a "bonus or commission." Mr. Laughlin does not allege that he asked Bordwok to pay him $680,000 for a bonus or commission or that he has requested that Bordwok pay him any amounts for a bonus or commission.

Mr. Laughlin's allegations do not state a cognizable claim because there would be no basis for determining if or when a breach of the alleged agreement occurred or the measure of damages for the breach. *See, e.g., Academy Chicago Publishers*, 578 N.E.2d at 984 ("if the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract"); *Collins v. Associated Pathologists, Ltd.*, 676 F. Supp. 1388, 1409 (C.D. Ill. 1987) (court would be unable to enforce a contractual term requiring payment of a bonus in the absence of evidence showing "that a predetermined formula was in place which established a means of calculating the amount of bonuses ...."). Accordingly, the claim should be dismissed.

### D.   Mr. Laughlin Failed To State A Claim For Quantum Meruit.

To state a cause of action for quantum meruit, a plaintiff must allege facts that show 1) the performance of services by plaintiff; 2) the conferral of the benefit of those services on the party from whom recovery is sought; and 3) the unjustness of the latter party's retention of the benefit in the absence of any compensation. *Roti v. Roti*, 845 N.E.2d 892, 900 (Ill. Ct. App. 2006). Under the federal pleading standard, a formulaic recitation of the elements does not suffice; the plaintiff must provide sufficient factual allegations to raise a right to relief on the claim above a speculative level. *Bell Atlantic Corp.*, 127 S. Ct. at 1965. Further, the plaintiff may not rely solely upon legal conclusions; actual factual allegations showing a right to relief must be alleged. *Id.* In this case, Mr. Laughlin's claim for quantum meruit should be dismiss for two reasons.

First, Mr. Laughlin fails to plead facts showing that he received less then reasonable value for his services. In *Roti*, a plaintiff brought a claim for quantum meruit and alleged that he

was entitled to additional compensation for his work for a real estate venture. The court granted the defendant's motion to dismiss on the ground that the plaintiff had failed to make any allegations (other than a bald legal conclusion) that would show that he had received less than reasonable value for his services. 845 N.E.2d at 901.

In this case, Mr. Laughlin alleges that he was paid $5,500 a month for his services. He claims that he is entitled to more on the basis of quantum meruit. However, as in *Roti*, Mr. Laughlin makes no allegations as to why he should be entitled to additional compensation. One could speculate that Mr. Laughlin provided some additional services above and beyond what was contemplated by his agreed-upon salary. However, a plaintiff is required to plead sufficient factual allegations to raise a right to relief on the claim above a speculative level. *Bell Atlantic Corp.*, 127 S. Ct. at 1965. Mr. Laughlin failed to do this with respect to his quantum meruit claim, and it should be dismissed.

Second, Illinois law does not permit recovery in quantum meruit when an actual contract governs the parties' relations. *Murray v. ABT Assocs., Inc.*, 18 F.3d 1376, 1379 (7th Cir. 1994) (plaintiff with agreement to receive fixed salary not entitled to recover additional amounts based on company's profitability). For example, in *O'Brien v. Omni Pro Electronics, Inc.*, No. 96C50043, 1996 WL 459853, at *5 (N.D. Ill. 1996), the plaintiff sued his former employer, claiming that the employer had failed to pay him all of the commissions due to him under his employment agreement. The court granted the defendant's motion to dismiss on the ground that the plaintiff had specifically alleged the existence of a contract governing his compensation. *Id.*

In this case, Mr. Laughlin pleaded the existence of a contract providing that he would be paid $5,500 a month. He makes no allegation that he was not paid this amount. Mr. Laughlin states that he is pleading his quantum meruit claim in the alternative. However, he did not properly plead the claim in the alternative. First, as factual matter, he alleged the existence of a specific contract with no qualification. Second, he incorporated and re-alleged those factual allegations as to the existence of a contract in his claim for quantum meruit. This subjects the quantum meruit claim to dismissal. *Cole-Haddon, Ltd. v. Drew Phillips Corp.*, 454 F. Supp. 2d 772, 777 (N.D. Ill. 2006); *AA Sales & Assocs., Inc. v. JT & T Products Corp.*, 48 F. Supp. 2d 805, 807-08 (N.D. Ill. 1999).

E.   **Mr. Laughlin Failed To State A Claim For A Constructive Trust.**

A constructive trust is not authorized in every case where one party allegedly owes money to another party. Some form of wrongdoing is a prerequisite to the imposition of a constructive trust. *Suttles v. Vogel*, 533 N.E.2d 901, 905 (Ill. 1988). Thus, a constructive trust

will not be imposed unless the complaint makes specific allegations of wrongdoing, such as fraud, breach of fiduciary duty, duress, coercion or mistake. *Id.* Furthermore, the grounds for imposing a constructive trust must be so clear, convincing, strong and unequivocal as to lead to but one conclusion. *Id.*

In this case, Mr. Laughlin alleges that he is entitled to a constructive trust on the ground that Defendants have wrongfully retained the bonuses and commissions that are allegedly "clearly owed" to him in unknown amounts at an unspecified time based upon an alleged oral agreement. (Complaint, ¶ 52). However, Mr. Laughlin makes no allegations of fraud or breach of fiduciary duty. If Mr. Laughlin's allegations were to be found to state a claim for a constructive trust, every case involving an alleged underpayment of money would also involve a constructive trust. As demonstrated above, Illinois law does not provide this remedy for every case of an alleged underpayment. Accordingly, Mr. Laughlin failed to state a claim for a constructive trust.

### F. Mr. Laughlin Failed To State A Claim For An Accounting.

In order to plead a claim for an accounting, a complaint must allege the absence of an adequate remedy at law and at least one of the following: 1) breach of fiduciary duty; 2) need for discovery; 3) fraud; or 4) the existence of mutual accounts which are of a complex nature. *Cole-Haddon*, 454 F. Supp. 2d at 778 (dismissing claim for accounting brought by sales representative seeking additional commissions).

Mr. Laughlin failed to plead any facts that would give rise to a right to recovery on this claim. His sole reason for seeking an accounting is an allegation that Bordwok has a "questionable financial situation." (Complaint, ¶ 56). That is insufficient to support a claim for an accounting. Further, should this case proceed with respect to any of the counts, Mr. Laughlin could use the regular discovery procedures to obtain any discovery he might need. An accounting is unnecessary, and this claim should be dismissed.

### G. Counts II-VI Should Be Dismissed With Respect To Mr. Lucas Because Plaintiffs Have Failed To State A Claim For Individual Liability.

Plaintiffs bring all of their claims against "Defendants." However, with the exception of the defamation claim, they do not set forth any allegations that would even suggest that that Mr. Lucas can be held personally liable for what the Plaintiffs themselves allege are corporate liabilities. Accordingly, as demonstrated below, all claims but the defamation claim are subject to dismissal on the ground that Plaintiffs have failed to state a claim for individual liability against Mr. Lucas.

With respect to Counts II through VI, Plaintiffs have made claims to recover on alleged corporate obligations of Bordwok. For example, with respect to the alleged Damen House agreement (Count II), Plaintiffs allege that they expected Bordwok to receive a payment from Plaintiffs. (Complaint, ¶ 19). There is no allegation that Mr. Lucas would personally receive a payment. With respect to the alleged bonus or commission agreement (Count III), Plaintiffs allege that Mr. Laughlin performed services on behalf of Bordwok. (Complaint, ¶ 24). There is no allegation that Mr. Laughlin performed services for Mr. Lucas in his personal capacity. With respect to the unjust enrichment claim (Count IV), Plaintiffs again allege that Mr. Laughlin performed services for Bordwok with no allegation of a benefit conferred on Mr. Lucas personally. Thus, Plaintiffs' claims are, by their own admissions, claims against Bordwok for alleged corporate liabilities.[2]

Under Georgia law, a member of a limited liability company is not liable for corporate liabilities so long as corporate forms are maintained. *Yukon Partners, Inc. v. Lodge Keeper Group, Inc.*, 258 Ga. App. 1, 5-6, 572 S.E.2d 647, 651 (2002).[3] Georgia courts exercise "great caution" when considering whether to disregard a corporate entity. *Id.* A plaintiff cannot pierce the corporate veil and hold an individual liable on a corporate claim unless the company is insolvent. *Johnson v. Lipton*, 254 Ga. 326, 327, 328 S.E.2d 533, 535 (1985). A claim against individual for a corporate liability is subject to dismissal in the absence of an allegation of insolvency. *In re Friedman's, Inc.*, No. 407CV041, 2008 WL 131163, at *16-17 (S.D. Ga. Jan. 10, 2008).

Plaintiffs do not allege abuse of the corporate forms and do not allege the insolvency of Bordwok. Al of the allegations against Mr. Lucas relate to alleged corporate obligations of Bordwok. Accordingly, Counts II through VI should be dismissed for failure to state a claim for individual liability against Mr. Lucas.

---

[2] Plaintiffs allege that Mr. Lucas made various representations to them with regard to the Damen House and the issue of Mr. Laughlin's compensation. However, by Plaintiffs' own allegations, the representations all related to the business of Bordwok. And there is nothing in the Complaint to suggest that Mr. Lucas was making these alleged representations in an individual capacity.

[3] Claims to hold individuals liable for corporate liabilities are governed by the law of the state of incorporation. *Stromberg Metal Works v. Press Mechanical, Inc.*, 77 F.3d 928, 933 (7th Cir. 1996). Bordwok is a Georgia Limited Liability Company. (Complaint, ¶ 2).

13

## CONCLUSION

For the foregoing reasons, Defendants respectfully ask the Court to dismiss Plaintiffs' Complaint, with prejudice.

**BORDWOK ENTERPRISES, LLC and**
**DANIEL LUCAS**

By: __/s/ Martin B. Carroll_____
One of Their Attorneys

Martin B. Carroll
**Fox, Hefter, Swibel, Levin & Carroll, LLP**
200 West Madison Street, Suite 3000
Chicago, Illinois 60606
(312) 224-1200

William V. Hearnburg, Jr.
**Smith, Gambrell & Russell, LLP**
Suite 3100, Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
(404) 815-3679