**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL LAUGHLIN** and **NICOLE LAUGHLIN**, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 08 C 1217 |
| **BORDWOK ENTERPRISES, LLC,** a Georgia limited liability company, and **DANIEL LUCAS,** | ) ) ) ) | Judge Samuel Der-Yeghiayan Magistrate Judge Susan E. Cox |
| Defendants. | ) ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS COUNT I OF PLAINTIFFS' FIRST AMENDED COMPLAINT**

Plaintiffs MICHAEL LAUGHLIN ("**Michael**") and NICOLE LAUGHLIN ("**Nicole**"), and each of them (collectively "**Plaintiffs**"), by their attorneys, Wildman, Harrold, Allen & Dixon LLP, state as follows for their Response in Opposition to Defendants' Motion to Dismiss Count I of Plaintiffs' First Amended Complaint ("**Complaint**"):

**INTRODUCTION**

Defendant Daniel Lucas ("**Lucas**") defamed Plaintiff Michael Laughlin on multiple occasions. Among other things, Lucas falsely accused Michael of obstructing company projects, of misappropriating company funds, and of incompetence in his job. And he made these statements not in the course of an employee evaluation or in a job reference, but he instead made them to Michael's co-investors and his subordinates during business calls and in e-mail messages. These slanderous remarks provide the basis for Michael's Defamation claim in Count I of the Complaint.

The Defendants seek dismissal of Count I of the Complaint on the grounds that it supposedly fails to state a claim for Defamation.  The Defendants' Motion, however, is without merit.

First, the law does not, in fact, require that the Plaintiffs set forth verbatim the allegedly defamatory statements.  The law only requires the Plaintiffs to make their allegations specific enough to allow the Defendants to respond appropriately.  Count I accomplishes that.  Moreover, the defamatory assertions set forth in the Plaintiffs' Complaint plainly describe statements of a factual nature, and not statements of non-actionable opinion.  Lucas falsely asserted that Michael misappropriated company funds and held up company projects, both of which are verifiably untrue, and therefore actionable.  Finally, no one could "reasonably construe" Lucas' statements as non-defamatory.  In the context in which Lucas made the statements—conversations in which Lucas extensively criticized Michael—the Defendants cannot support any "innocent construction" of the assertions.  In short, each of the Defendants' arguments lacks merit, and the Court should deny their Motion.

## ARGUMENT

### 1.    PLAINTIFFS' DEFAMATION ALLEGATIONS ARE SUFFICIENTLY SPECIFIC.

The Defendants' Motion overstates federal requirements regarding the pleading of facts. While the Supreme Court did recently clarify that a complaint requires *some* level of factual specificity, the *Twombly* Court also specifically noted that "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007).  Rather, to comport with the requirement of Federal Rule of Civil Procedure 8(a)(2) that a complaint "give the defendant fair notice of what the … claim is and the grounds upon which it rests," a complaint must only contain "[f]actual

allegations [that] raise a right to relief above a speculative level." *Id.* at 1964–5; *see also Killingsworth v. HSBC Bank Nevada, N.A.,* 507 F.3d 614, 619 (7th Cir. 2007) (reversing the district court's dismissal of a plaintiff's claim under Rule 12(b)(6), and holding that *Twombly* stands for the proposition that a complaint should be dismissed only where the factual detail is "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8"). And while a litigant must plead some causes of action with a greater degree of specificity (i.e., those causes of action spelled out by Rule 9), the pleading of a Defamation *per se* claim is still governed by the more lenient standard of Rule 8. *See Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 926 (7th Cir. 2003).

Moreover, just as the Defendants overstate the necessity of pleading extensive facts in a complaint, they also overstate the requirements for pleading a Defamation *per se* claim. The Defendants argue that federal notice pleading standards "require" that a plaintiff set forth in his complaint the precise statements that are defamatory. (See Motion, Court's Electronic Docket No. 17, at p. 7). Nowhere in Rule 8, however, will one find such a requirement. *See* Fed. R. Civ. P. 8. And while some courts hold that the "precise statements" alleged to be defamatory must be included in a complaint, that does not necessarily mean that a plaintiff must reproduce the statements in his complaint verbatim.

"To bring a defamation claim, Plaintiffs are required to plead the alleged defamatory words published or spoken by the defendant, but need not allege the defamatory language verbatim." *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 919 (N.D. Ill. 2007) (finding that the allegedly defamatory statements were sufficiently pled, and denying motion to dismiss); *see also Emery v. Northeast Regional Commuter R.R. Corp.*, No. 02 C 9393, 2003 U.S. Dist. LEXIS 16403 at *7 (N.D. Ill. Sept. 18, 2003) (attached hereto as Exhibit 1) (holding same, and denying

motion to dismiss); *United Lab., Inc. v. Saviano*, No. 06 C 1442, 2007 U.S. Dist. LEXIS 94034 at *35 (N.D. Ill. Dec. 21, 2007) (attached hereto as Exhibit 2) (holding same, and denying motion to dismiss). Instead, the rules require a plaintiff to allege the defamation specifically enough to allow the defendant to respond appropriately, which includes being able to determine whether the language is defamatory. *Flentye*, 485 F. Supp. 2d at 919; *see also Betten v. Citibank, F.S.B.*, No. 94 C 5460, 1995 U.S. Dist. LEXIS 8924 at *9 (N.D. Ill. June 27, 1995) (attached hereto as Exhibit 3) (finding that the allegedly defamatory statements were sufficiently pled, and denying motion to dismiss). Moreover, whether or not the plaintiff wraps the allegedly defamatory statements in quotation marks is irrelevant; a minimum degree of specificity is the touchstone. *See Flentye*, 485 F. Supp. 2d at 919 (where the Court held that both the statements pled inside and outside of quotation marks in the complaint were sufficiently specific to allow the defendant respond).

In this case, Plaintiff's statements meet the specificity threshold. For each such statement, Plaintiffs' allegations set forth the date, time, mode of communication, speaker, audience, context, and content of each defamatory statement. (See Complaint, Docket No. 13, p. 13, ¶ 59). The Defendants can therefore easily determine whether the statements are defamatory so as to prepare an appropriate response, which is all that the rules require. *See Flentye*, 485 F. Supp. 2d at 919. The Defendants' Motion should be denied.[1]

---

[1] Parenthetically, the Plaintiffs note that the Defendants' Motion also makes an argument specific to the defamatory statement made by Lucas in a February 20, 2008 e-mail, which is alleged in Paragraph 59 of the Plaintiffs' Complaint. (See Motion, Docket No. 17, at p. 8). The Defendants complain that the Plaintiffs do not "attach the actual email or set forth the exact language contained in the actual email." The Defendants ignore, however, that Lucas directed the message to various people other than the Plaintiffs. (See Complaint, Docket No. 13, p. 13, ¶ 59). Generally, plaintiffs are not required to plead facts as to which they lack access prior to discovery. *See Katz v. Household Int'l, Inc.*, 91 F.3d 1036, 1040 (7th Cir. 1996). The Plaintiffs' allegation on this point says as much as it can without possessing the actual e-mail message itself, and yet it still provides the Defendants with specific notice for them sufficient to respond to the allegation, which is all the rules require of the Plaintiffs at this juncture. *See Flentye*, 485 F. Supp. 2d at 919.

### 2.   PLAINTIFFS' DEFAMATION ALLEGATIONS PERTAIN TO FALSE STATEMENTS OF FACT MADE BY LUCAS, AND ARE THEREFORE ACTIONABLE.

The Defendants contend that the alleged defamatory statements are not actionable because they are "protected expressions of opinion" rather than claims of fact. (See Motion, Docket No. 17, at pp. 3–7). Defendants are incorrect. "[T]here is no separate first amendment privilege for statements of opinion, and … a false assertion of fact can be libelous even though couched in terms of an opinion." *Bryson v. News America Publications, Inc.,* 174 Ill. 2d 77, 99–100, 672 N.E.2d 1207, 1219–20 (1996), *citing Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 19, 110 S. Ct. 2695, 2706, 111 L. Ed. 2d 1, 18  (1990) ("simply couching the statement 'Jones is a liar' in terms of opinion—'In my opinion Jones is a liar'—does not dispel the factual implications contained in the statement").  The test "is a restrictive one … [A] statement is constitutionally protected under the first amendment only if it cannot be 'reasonably interpreted as stating actual facts.'" *Bryson,* 672 N.E.2d at 1220, *citing Milkovich,* 497 U.S. at 20.  In making this determination, courts generally apply three factors: (1) whether the statement has a precise and readily understood meaning, (2) whether the statement is verifiable, and (3) whether the statement's literary or social context signals that it has factual content. *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 398, 882 N.E.2d 1011, 1022 (2008).

Defendants seek to avoid an individualized examination of the statements alleged in Count I by lumping them into a single group and asserting that they "are identical or similar to" statements that have been found by other courts to be non-actionable opinions. (See Motion, Docket No. 17, at pp. 4–5).  Even a cursory review of the statements alleged in Count I plainly reveals that they can, and should, be reasonably interpreted as stating actual fact, and are therefore actionable.  The Plaintiffs discuss each of the four allegations from Count I of their

Complaint below in the context of the three *Imperial Apparel* factors identified by the Illinois Supreme Court, *see Imperial Apparel,* 882 N.E.2d at 1022:

- "*On December 10, 2007, on a conference call with Rob Gavin, Chris Mitchell, Mike Laughlin, and Jason Blair, Lucas falsely represented that Michael was unorganized, irresponsible, and incompetent, that the company could not move on to fund other projects because $1 million of Bordwok's money was tied up in Chicago due to Michael's poor performance, and he told the others that Bordwok cannot account for every penny of Bordwok's money that Michael has spent*." (Complaint, Docket No. 13, p. 13, ¶ 59).

During this conversation, Lucas made at least two factual, verifiable, defamatory statements about Michael: (1) that $1 million of Bordwok's money was tied up in Chicago because of Michael's allegedly bad performance, and (2) that Michael misappropriated (or at best misplaced) Bordwok funds.  Both of these statements have precise and readily understood meanings and both are defamatory.  Lucas clearly meant to convey that Michael's alleged incompetence had tied up $1 million of Bordwok's money, and that Michael had stolen, lost or misspent company funds.  Moreover, each statement is verifiable. A review of Bordwok's financial statements and receipts will objectively verify whether these assertions were true or false.

Finally, the statements' context—a conference call with Bordwok investors and employees led by Bordwok's President and General Manager regarding the state of the company's financial affairs—signals that it has factual content.  In other words, the statements were clearly not—as the Defendants would apparently have the Court believe—made in the setting of a supervisor evaluating an employee or providing a job reference, such as in the cases cited in their Motion.  The conversation was clearly a business call to inform investors as to the financial status of the company.  This statement can and should be reasonably interpreted as stating actual fact, and is therefore actionable. *See, e.g.*, *Solaia Technology, LLC v. Specialty Publishing Co.,*  221 Ill. 2d 558, 584–5, 852 N.E.2d 825, 841–42 (2006) (a statement published

in letter to the editor of trade magazine that patent was "essentially worthless" was actionable because it "ha[d] a very precise meaning in the context of the letter" and implied actual facts).

- *"On February 20, 2008, Lucas sent an e-mail message to Chris Mitchell, Rob Gavin, Luke Wilkins, and Jerry Lucas wherein he implied that Michael had mishandled the company's finances."* (Complaint, Docket No. 13, p. 13, ¶ 59).

This statement also has a very precise meaning: that Michael improperly managed Bordwok's finances. A review of Bordwok's financial statements will objectively verify whether this assertion was true or false. And again, the statement's context (an e-mail to Bordwok investors sent by Bordwok's President and General Manager regarding the state of the company's financial affairs) shows its factual content. This statement, too, can and should be reasonably interpreted as stating actual fact, and is therefore actionable. *See Solaia,* 852 N.E.2d at 841–42.

- *"On February 7, 2008, Lucas made a telephone call to Jason Blair and Luke Wilkins wherein he falsely claimed that Michael was jeopardizing the company's future by failing to turn over the Damen building."* (Complaint, Docket No. 13, p. 13, ¶ 59).

No question can exist as to this statement's meaning: Michael was asked, but refused, to turn title of the Damen building over to Bordwok, which hurt the company's bottom line and put its future in jeopardy. Moreover, this statement clearly implies that Michael had some obligation to turn over the Damen building upon Bordwok's request. A review of Bordwok's financial statements and other internal documents will objectively verify the falsity of these assertions. The statement's context—a telephone call with Bordwok employees and Bordwok's President and General Manager regarding the state of the company's financial affairs—shows that it had factual content.

- *"On repeated occasions, Lucas called Chris Mitchell and falsely told him, among other things, that Michael is incompetent, doing a bad job, is holding up further Boardwalk ventures, and is responsible for Bordwok being unable to launch the planned Bordwok Mortgage venture."* (Complaint, Docket No. 13, p. 13, ¶ 59).

Finally, this statement, too, has a definite meaning: the "Bordwok Mortgage" venture could not go forward because Michael mismanaged Bordwok's Chicago projects. A review of Bordwok's internal documents and depositions of the people involved with that proposed venture will prove this assertion to have been false. And the statement's context again demonstrates that it has factual content. This statement can and should be reasonably interpreted as stating actual fact, and is therefore actionable. *See Solaia,* 852 N.E.2d at 841–42.

In sum, all of the defamatory statements alleged by the Plaintiffs concerned Lucas' false statements of fact about Michael. As such, they are actionable, and the Defendants' Motion should be denied.

### 3. LUCAS' DEFAMATORY STATEMENTS ARE NOT REASONABLY CAPABLE OF AN "INNOCENT CONSTRUCTION" GIVEN THEIR CONTEXT.

Defendants finally argue that Lucas' defamatory statement that "we can't account for every penny that Mike has spent" is "capable" of an innocent construction and therefore non-actionable. (See Motion, Docket No. 17, pp. 8–9). Defendants hypothesize that this statement "could be reasonably interpreted as an expression by Bordwok's President and CEO that the company needs to do a better job at reconciling spending." (Motion, Docket No. 17, p. 9).

Again, however, the Defendants misconstrue the law applicable to the topic. The Illinois Supreme Court has made clear that the "innocent construction rule" does not apply simply because allegedly defamatory words are merely "capable" of an innocent construction. *Bryson v. News America Publications, Inc.* 174 Ill. 2d 77, 93, 672 N.E.2d 1207, 1217 (1996) (reversing dismissal of complaint based upon innocent construction rule). Rather, in applying the innocent construction rule, courts must give the allegedly defamatory words their "natural and obvious meaning," and interpret the words "as they appeared to have been used and according to the idea

they were intended to convey" to the listener. *Bryson,* 672 N.E.2d at 1217; *see also Chapski v. The Copley Press*, 92 Ill. 2d 344, 350–51, 442 N.E.2d 195, 198 (1982) (holding same).  When a defamatory meaning was clearly intended and conveyed, the courts will not strain to interpret allegedly defamatory words in their mildest and most inoffensive sense in order to hold them non-defamatory under the innocent construction rule. *Bryson,* 672 N.E.2d at 1217.  The rule does not require a court to stretch to find an unnatural but possibly innocent meaning for words where the defamatory meaning is far more reasonable, nor does it require a court to espouse a naiveté unwarranted under the circumstances. *Id.; see also, Solaia Technology, LLC v. Specialty Publishing Co.,* 221 Ill. 2d 558, 580, 852 N.E.2d 825, 839 (2006) (reversing dismissal of complaint based upon innocent construction rule).  Thus, if the likely intended meaning of a statement is defamatory, a court should not dismiss the plaintiff's claim under the innocent construction rule. *Tuite v. Corbitt,* 224 Ill. 2d 490, 511–12, 866 N.E.2d 114, 127–28 (2006) (reversing dismissal of complaint based upon innocent construction rule ).

    The Illinois Supreme Court has also emphasized that the context of a statement is critical in determining its meaning. *Tuite*, 866 N.E.2d at 127; *Bryson,* 672 N.E.2d at 1217  "A given statement may convey entirely different meanings when presented in different contexts." *Tuite*, 866 N.E.2d at 127.  Indeed, in *Tuite*, which concerned an allegedly defamatory passage about the plaintiff in a book authored by the defendant, the high court reversed the appellate and circuit courts' innocent interpretation of the passage in question based upon a reading of the book as a whole. *Id.* at 127–29.  The court wrote:

> [The defendant's book] is essentially a series of stories about mafia figures and their activities.  A review of the book shows its context is organized crime and corruption in the Chicago area and [the defendant author's] involvement in those activities. … [T]he book "recounts story after story of corruption, including within the judicial system." The disputed statements must be viewed in the context of the corruption described repeatedly throughout [the book].  Given the

overwhelming focus on corruption in this book, these statements cannot reasonably be given an innocent construction.

*Id.* at 127–28.

Applying the principles pertaining to the innocent construction rule as stated on multiple occasions by the Illinois Supreme Court, it is clear that Lucas' statement that "we can't account for every penny that Mike has spent" is not reasonably subject to an innocent construction. The implication in that statement was clear: at best, Michael wasted or misplaced money; at worst, Michael stole company funds. Either qualifies as Defamation *per se*. Moreover, the context of Lucas' defamatory statement makes clear what Lucas intended to convey. Lucas made the statement during a conference call with Bordwok investors and employees during which he also stated that Michael was unorganized, irresponsible, and incompetent. (Complaint, Docket No. 13, p. 13, ¶ 59). During the same call, he further blamed Michael's supposedly poor job performance on tying up $1 million of Bordwok's money in Chicago projects. (Complaint, Docket No. 13, p. 13, ¶ 59). In the context of a conversation in which Lucas was disparaging Michael and his job performance, his statement that "we can't account for every penny that Mike has spent" can be reasonably interpreted in only one way—as a defamatory statement that Michael wasted, lost, or misappropriated Bordwok's money.

Despite the statement's clear meaning (not to mention its intent), the Defendants nevertheless ask this Court to construe Lucas' statement out of context and in its best possible light, which, of course, is an approach that the Illinois Supreme Court has repeatedly rejected. *See, e.g., Bryson,* 672 N.E.2d at 1217; *Tuite,* 866 N.E.2d at 127. Lucas' statement that "we can't account for every penny that Mike has spent" is actionable because it is not reasonably subject to an innocent construction. The Defendants' Motion must therefore be denied.

## CONCLUSION

Count I of the Plaintiffs' Complaint plainly asserts sufficient details to state a cause of action for Defamation *per se* against the Defendants. The Complaint contains sufficiently precise allegations concerning Lucas' defamatory statements of fact concerning Michael. Moreover, the statements made by Lucas cannot be excused by a tortured "innocent construction." As such, Count I adequately states a cause of action against the Defendants, and the Defendants' Motion should be denied.


Dated: May 23, 2008                       Respectfully Submitted,

                                          MICHAEL & NICOLE LAUGHLIN


                                          By:   s/ Martin D. Snyder
                                                  One of their Attorneys


John S. Letchinger
Martin D. Snyder
Megan C. Millirons
WILDMAN, HARROLD, ALLEN & DIXON LLP
225 West Wacker Drive
Chicago, Illinois 60606-1229
(312) 201-2000
(312) 201-2500 (fax)

*Attorneys for Plaintiffs*
  *Michael & Nicole Laughlin*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that he electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and also certifies that the document is being served on the following persons in compliance with CM/ECF requirements which generate service through the Court's electronic filing system, or, where appropriate, via U.S. Mail delivery from 225 West Wacker Drive, Chicago, Illinois, postage prepaid, on May 23, 2007:

Martin B. Carroll, Esq.
Josh Goldberg, Esq.
Fox, Hefter, Swibel, Levin & Carroll, LLP
200 West Madison Street
Chicago, Illinois 60606

/s/ Martin Snyder
Martin D. Snyder,
Attorney at Law
