# EXHIBIT 2

LEXSEE 2007 US DIST LEXIS 94034

**UNITED LABORATORIES, INC., a Delaware corporation, and JULIE ANNE BENSON, as directed Trustee on behalf of United Laboratories, Inc.'s Employee Stock Ownership Plan and as directed Trustee on behalf of United Laboratories, Inc.'s Leveraged Employee Stock Ownership Plan, Plaintiffs, v. MAUREEN R. SAVAIANO, individually, as Executor of the Estate of Nicholas J. Savaiano, deceased, and as Trustee of the Nicholas J. Savaiano 1997 Trust, DONALD F. SAVAIANO, individually and as nominee for Florence Savaiano, a Trustee on behalf of the Scully Savaiano Insurance Trust, ROBERT G. DIFINO, JAMIE SAVAIANO MALONEY and WILLAMETTE MANAGEMENT ASSOCIATES, INC., an Oregon corporation, Defendants. MAUREEN R. SAVAIANO, individually, as Executor of the Estate of Nicholas J. Savaiano, deceased, and as Trustee of the Nicholas J. Savaiano 1997 Trust, DONALD F. SAVAIANO, ROBERT G. DIFINO and JAMIE SAVAIANO MALONEY, Defendants/Counterclaimants, v. UNITED LABORATORIES, INC., a Delaware corporation, Plaintiff/Counterdefendant, and JULIE ANNE BENSON, KIMBERLY J. THEODORE, MARK A. HOFFMEYER, WILLIAM BECKER, ROBERT WAHLBECK, and PAUL O'NEILL, Counterdefendants.**

No. 06 C 1442

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2007 U.S. Dist. LEXIS 94034

December 21, 2007, Decided
December 21, 2007, Filed

**SUBSEQUENT HISTORY:** Motion granted by, in part, Motion denied by, in part, Dismissed by, in part United Labs., Inc. v. Savaiano, 2008 U.S. Dist. LEXIS 936 (N.D. Ill., Jan. 7, 2008)

**PRIOR HISTORY:** United Labs., Inc. v. Savaiano, 2007 U.S. Dist. LEXIS 85710 (N.D. Ill., Nov. 19, 2007)

**COUNSEL:** [*1] For United Laboratories, Inc., a Delaware corporation, Julie Anne Benson, as directed Trustee on behalf of United Laboratories, Inc.'s Employee Stock Ownership Plan and as directed Trustee on behalf of United Laboratories, Inc.'s Leveraged Employee Stock Ownership Plan, Plaintiffs: J. Timothy Eaton, LEAD ATTORNEY, Barton James O'Brien, Brian L. Crowe, Michael P. Sheehan, Shefsky & Froelich Ltd, Chicago, IL; Gabriel Reilly-Bates, Jenner & Block LLP, Chicago, IL.

For Maureen R. Savaiano, individually estate of Nicholas J. Savaiano, Donald F. Savaiano, individually and as a Trustee on behalf of the Scully Savaiano Insurance Trust, Robert G. Difino, Jamie Savaiano Maloney, Defendants: David M. Allen, LEAD ATTORNEY, Jin-Ho Chung, Rachel T. Nguyen, Schuyler, Roche & Zwirner, Chicago, IL; Jeffrey Ray Rosenberg, O'Halloran, Kosoff, Geitner & Cook, PC, Northbrook, IL.

For Willamette Management Associates, Inc., an Oregon corporation, Defendant: Charles Franklin, LEAD ATTORNEY, Wolin Keller and Rosen, Ltd., Chicago, IL; Brett Ian Goldman, Wolin, Kelter & Rosen, Ltd., Chicago, IL.

For McDermott Will & Emery LLP, Third Party Defendant: Mitchell L. Marinello, Stephen Novack, LEAD ATTORNEYS, Novack [*2] & Macey, Chicago, IL; Melissa Bema Pryor, Perkin Coie LLP, Chicago, IL.

For James E Ahern, deponent: Raj Niranjan Shah, DLA Piper US LLP IL, Chicago, IL.

For Cole Taylor Bank, Third Party Defendant, Cross Claimant: William Scott Porterfield, LEAD ATTORNEY, Barack Ferrazzano Kirschbaum & Nagelberg LLP, Chicago, IL; Annaliese Flynn Fleming, Barack, Ferrazzano, Kirschbaum, & Nagelberg, Chicago, IL.

For United Laboratories, Inc., a Delaware corporation, Counter Defendant: Michael P. Sheehan, Shefsky & Froelich Ltd, Chicago, IL.

For William L Becker, Counter Defendant: Barton James O'Brien, J. Timothy Eaton, Michael P. Sheehan, Shefsky & Froelich Ltd, Chicago, IL; Gabriel Reilly-Bates, Jenner & Block LLP, Chicago, IL.

For Julie Anne Benson, Mark A Hoffmeyer, Paul O'Neill, Kimberly J Theodore, Robert Wahlbeck, Counter Defendants: Brian L. Crowe, LEAD ATTORNEY, Barton James O'Brien, J. Timothy Eaton, Michael P. Sheehan, Shefsky & Froelich Ltd, Chicago, IL; Gabriel Reilly-Bates, Jenner & Block LLP, Chicago, IL.

For William L Becker, Counter Defendant: Brian L. Crowe, LEAD ATTORNEY, Shefsky & Froelich Ltd, Chicago, IL.

For Maureen R. Savaiano, individually, Donald F. Savaiano, individually and as [*3] a Trustee on behalf of the Scully Savaiano Insurance Trust, Robert G. Difino, Jamie Savaiano Maloney, ThirdParty Plaintiffs: David M. Allen, Schuyler, Roche & Zwirner, Chicago, IL.

For United Laboratories, Inc., a Delaware corporation, Cross Defendant: J. Timothy Eaton, LEAD ATTORNEY, Barton James O'Brien, Brian L. Crowe, Michael P. Sheehan, Shefsky & Froelich Ltd, Chicago, IL; Gabriel Reilly-Bates, Jenner & Block LLP, Chicago, IL.

**JUDGES:** JAMES F. HOLDERMAN, Chief Judge.

**OPINION BY:** JAMES F. HOLDERMAN

**OPINION**

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On April 13, 2006, plaintiffs United Laboratories, Inc. ("United Labs") and Julie Anne Benson (as directed Trustee on behalf of United Labs' Employee Stock Ownership Plan ("ESOP I") and United Labs' Leveraged Employee Stock Ownership Plan ("ESOP II")) (collectively "Plaintiffs") filed a nine-count Amended Complaint alleging claims for breach of fiduciary duty, prohibited transactions, unjust enrichment, aiding and abetting breach of fiduciary duty, breach of contract, and conspiracy, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and state common law. The Amended Complaint was directed against [*4] defendants Willamette Management Associates Inc. ("Willamette"), Cole Taylor Bank ("Cole Taylor"), and former United Labs' Board of Directors members Maureen R. Savaiano,[1] Donald F. Savaiano,[2] Robert G. Difino, and Jamie Savaiano Maloney ("the Savaiano Defendants"). Plaintiffs voluntarily dismissed Cole Taylor as a defendant in this case on June 5, 2006.

    1  Maureen Savaiano is sued individually, as executor of the Estate of Nicholas J. Savaiano, deceased, and as Trustee of the Nicholas J. Savaiano 1997 Trust.
    2  Donald Savaiano is sued individually and as nominee for Florence Savaiano, a Trustee on behalf of the Scully Savaiano Insurance Trust.

On October 27, 2006, the Savaiano Defendants filed a twenty-count Counterclaim against Plaintiff/Counterdefendant United Labs and Individual Counterdefendants Julie Anne Benson ("Benson"), Kimberly J. Theodore ("Theodore"), Mark A. Hoffmeyer ("Hoffmeyer"), William Becker ("Becker"), Robert Wahlbeck ("Wahlbeck"), and Paul O'Neill ("O'Neill") (collectively the "Individual Counterdefendants"). Addressed in this memorandum opinion is United Labs' and the Individual Counterdefendants' Rule 12(b)(6) Motion to Dismiss Counts XII, XIII and XV through XX [*5] of the Savaiano Defendants' Counterclaim. (Dkt. No. 131).

For the reasons set forth below, the Counterdefendants' Motion to Dismiss is granted in part and denied in part. Counts XV and XVI are dismissed with prejudice. All other counts remain pending. The Counterdefendants are to file their Answer to Counts XII, XIII and XVII through XX on or before January 11, 2008. The case remains set for a report on status at 9:00 a.m. on January 17, 2008 to discuss further scheduling in this case.

BACKGROUND

United Labs is a Delaware corporation with its principal place of business located in St. Charles, Illinois. It is engaged in the business of manufacturing, purchasing, and selling specialty chemical products used by professional maintenance personnel at institutions, industrial companies, municipalities, and commercial establishments. United Labs was founded by Nicholas Savaiano in 1964 and, until early 2004, its Board of Directors was

Case 1:08-cv-01217  Document 19-3  Filed 05/23/2008  Page 4 of 11

Page 3
2007 U.S. Dist. LEXIS 94034, *

at all times majority-controlled by members of the Savaiano family.

In their Amended Complaint, Plaintiffs allege that new management elected in April, 2004, uncovered evidence that many of United Labs' previous financial transactions operated to benefit members [*6] of the Savaiano family, instead of United Labs and its shareholders. Among these allegedly unlawful transactions are certain alleged violations of federal ERISA law. The court's jurisdiction is based in part upon its authority to determine questions of federal law, see 28 U.S.C. § 1331, as well as its supplemental jurisdiction over all relevant state law claims and counterclaims. See 28 U.S.C. § 1367.

In their Counterclaim, the Savaiano Defendants/Counterplaintiffs [3] allege numerous claims against United Labs for breach of contract (Counts I-VII and XIV) and anticipatory breach of contract (Counts VIII-XI). These counts are based upon various contracts executed between United Labs and the Savaianos. Additionally, and at issue in this pending Motion to Dismiss, the Savaianos assert that individual members of United Labs' Board of Directors (Benson, Theodore, Hoffmeyer, Becker, Wahlbeck, and O'Neill) are liable to the Savaianos for tortious interference with contract (Count XII) and conspiracy to commit tortious interference with contract (Count XIII), and that United Labs and the Individual Counterdefendants are liable for tortious interference with economic advantage (Count XV), breach [*7] of fiduciary duty (Count XVI), defamation (Counts XVII and XIX), and false light invasion of privacy (Counts XVIII and XX). This pending motion seeks the dismissal of only those counterclaims alleged against the Individual Counterdefendants.

    3  For clarity and ease of use, the court will refer to the Savaiano Defendants/Counterplaintiffs simply as "the Savaianos" in the remainder of the opinion.

LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint generally needs to include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must "give the defendant fair notice of what the. . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* U.S. , 127 S. Ct. 1955, 1969, 167 L. Ed. 2d 929 (May 21, 2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)); see also *Killingsworth v. HSBC Bank Nevada, N.A.,* 507 F.3d 614, 618 (7th Cir. 2007). As long as the factual allegations in the complaint "raise a right to relief above the speculative level" and plead "enough facts to state a claim to relief that is plausible on its face," the complaint will withstand a 12(b)(6) challenge. [*8] *Killingsworth,* 507 F.3d at 618 (quoting *Bell Atlantic,* 127 S. Ct. at 1965, 1974). The crux of the court's analysis is whether the factual detail in the complaint provides the defendant with sufficient notice of the claims alleged against him or her. *Id.* at 619 (citing *Airborne Beepers & Video, Inc. v. AT & T Mobility, LLC,* 499 F.3d 663, 667 (7th Cir. 2007)).

In conducting its analysis, the court assumes that all well-pleaded allegations in the complaint are true. *Erickson v. Pardus,* U.S. , 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (quoting *Bell Atlantic,* 127 S. Ct. at 1965). However, a plaintiff can plead herself out of court if a complaint includes facts that undermine its own allegations. *Kolupa v. Roselle Park Dist.,* 438 F.3d 713, 715 (7th Cir. 2006). Any exhibits attached to a complaint are considered to be a part of the pleadings. *Moranski v. Gen. Motors Corp.,* 433 F.3d 537, 539 (7th Cir. 2005).

ANALYSIS

Applying the legal standard articulated above, the court now turns its attention to each of the counterclaims alleged by the Savaianos against the Individual Counterdefendants.

1. Count XII - Tortious Interference with Contract

In Count XII of their Counterclaim, the Savaianos allege that [*9] counterdefendant Theodore unlawfully interfered with certain contracts between the Savaianos and United Labs, resulting in the breach of these contracts by United Labs. To prevail on their tortious interference with contract claim, the Savaianos must ultimately prove: (1) the existence of a valid and enforceable contract between the Savaianos and United Labs; (2) Theodore's awareness of this contractual relation; (3) Theodore's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by United Labs, caused by Theodore's wrongful conduct; and (5) damages to the Savaianos. See *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 131 Ill. 2d 145, 545 N.E.2d 672, 676, 137 Ill. Dec. 19 (Ill. 1989).

Theodore is currently the Chair of United Labs' Board of Directors. (Counterclaim P 7). Under Illinois law, corporate officers and directors are afforded a qualified privilege to use their business judgment and discretion on behalf of the corporation. *IOS Capital, Inc. v. Phoenix Printing, Inc.,* 348 Ill. App. 3d 366, 808 N.E.2d 606, 612, 283 Ill. Dec. 640 (Ill. App. Ct. 4th Dist. 2004) (citing *HPI Health Care Servs., Inc.,* 545 N.E.2d at 677). In other words, as long as the corporate officers interfering in corporate contracts are "acting [*10] in accordance with their business judgment and discretion, [they] 'lack the requisite "malice" and therefore are not liable in

Page 4
2007 U.S. Dist. LEXIS 94034, *

tort.'" *Id.* at 613 (quoting *Swager v. Couri,* 77 Ill. 2d 173, 395 N.E.2d 921, 928, 32 Ill. Dec. 540 (Ill. 1979)). In recognizing this qualified privilege, Illinois courts have determined that "[t]he duty of corporate officers and directors to their corporations' shareholders outweighs any duty they may have towards parties contracting with the corporation." *MGD, Inc. v. Dalen Trading Co.,* 230 Ill. App. 3d 916, 596 N.E.2d 15, 18, 172 Ill. Dec. 736 (Ill. App. Ct. 1st Dist. 1992) (citing *HPI Health Care Servs., Inc.,* 545 N.E.2d at 677).

On the other hand, corporate officers are not privileged for "conduct which is totally unrelated or even antagonistic to the interest which gave rise to the defendant's privilege." *HPI Health Care Servs., Inc.,* 545 N.E.2d at 678. For example, the privilege will not apply "where officers act *solely* for their own gain or *solely* for the purpose of harming [the] plaintiff since such conduct is not undertaken to further the corporation's interest." *Cress v. Recreation Servs., Inc.,* 341 Ill. App. 3d 149, 795 N.E.2d 817, 843, 277 Ill. Dec. 149 (Ill. App. Ct. 2d Dist. 2003) (quoting *Mittelman v. Witous,* 135 Ill. 2d 220, 552 N.E.2d 973, 987, 142 Ill. Dec. 232 (Ill. 1989)) (emphasis in original). [*11] To overcome this qualified privilege, the plaintiff bears the burden of proving that the officer's conduct was unjustified or malicious, and therefore outside the scope of the privilege. *HPI Health Care Servs., Inc.,* 545 N.E.2d at 677.

In their Counterclaim, the Savaianos have alleged that Theodore was United Labs' CEO and Chairman of United Labs' Board of Directors at the time she allegedly induced the breach of United Labs' contracts with the Savaianos. (Counterclaim PP 147, 149). The qualified privilege for corporate directors and officers therefore generally applies to Theodore's actions. At this stage in the proceedings, to avoid pleading themselves out of court, the Savaianos must allege sufficient facts so as to state a plausible right to relief, despite this qualified privilege. *See generally, Bell Atlantic,* 127 S. Ct. at 1974.

The Savaianos allege that, in 2003, Nicholas and Maureen Savaiano had planned to restructure United Labs' management upon Nicholas Savaiano's retirement. (Counterclaim P 142). This restructuring allegedly included the creation of three different CEO positions: Donald Savaiano was to be President and CEO of Sales and Marketing; Theodore was to be CEO of [*12] Operations and Administration; and Hoffmeyer was to be CEO of Finance. (*Id.*). Nicholas and Maureen Savaiano also allegedly envisioned a seven-member Board of Directors, consisting of Nicholas Savaiano, Maureen Savaiano, Donald Savaiano, Theodore, Hoffmeyer, Becker, and Bill Merten. (*Id.*). The Savaianos allege that Theodore expressed her dissatisfaction with this arrangement on numerous occasions, complaining to Nicholas and Maureen Savaiano--both in person and in writing--that she (Theodore) should be named President and/or sole CEO of United Labs. (*Id.* P 143).

After Nicholas Savaiano's death on February 1, 2004, Theodore and Benson allegedly met with Maureen Savaiano and persuaded her to resign from United Labs' Board of Directors. (*Id.* P 145). At this meeting, Theodore is alleged to have adamantly rejected Maureen Savaiano's suggestion that two new members should be appointed to the Board of Directors to fill the positions vacated by Nicholas Savaiano's death and Maureen Savaiano's retirement. (*Id.*). Maureen Savaiano also allegedly told Theodore once again that she did not believe Theodore was qualified to become President and CEO of United Labs. (*Id.*). After Maureen Savaiano resigned [*13] from the Board of Directors, the remaining five members of the Board proceeded to elect Theodore as Chairman of the Board of Directors and sole CEO of United Labs. (*Id.* P 147).

The Savaianos allege that Theodore used her position as CEO to persuade the Board of Directors to permit United Labs' breach of certain contracts it had with Nicholas and Maureen Savaiano. (*Id.* P 149). In inducing United Labs' breach, Theodore was allegedly motivated by a desire "to pursue her own personal agenda against Nicholas and Maureen." (*Id.*). This agenda included "get[ting] revenge against Nicholas and Maureen for their refusal to endorse Theodore as overall CEO of United Labs." (*Id.* P 143). The Savaianos allege that Theodore induced the breach of United Labs' contracts with the Savaianos solely for her own personal interests, and not for the benefit of United Labs. (*Id.* P 152).

The court finds that the Savaianos have alleged sufficient facts to support their argument that Theodore acted solely with the intent to harm Nicholas and Maureen Savaiano, thus negating the qualified privilege that Theodore enjoys as CEO and Chairman of United Labs' Board of Directors. Specifically, the content, timing, and frequency [*14] of Theodore's alleged discussions with Nicholas and Maureen Savaiano support a plausible inference that Theodore's subsequent actions were motivated by revenge. Through the allegations set forth in the Counterclaim, Theodore has been put on notice of both the Savaiano's claim against her and the factual basis for their argument that the qualified privilege should not apply in this case. The Federal Rules of Civil Procedure do not require more at this stage in the proceedings.

In their motion to dismiss, the Individual Counterdefendants argue that Count XII must be dismissed because the Savaianos have failed to plead that Theodore's conduct was contrary to the interests of United Labs. However, this pleading requirement was explicitly rejected in *Cress,* where the Second District Illinois Appellate Court held that "[s]pecific harm to the corporation need not be

Case 1:08-cv-01217   Document 19-3   Filed 05/23/2008   Page 6 of 11

Page 5
2007 U.S. Dist. LEXIS 94034, *

pleaded or proved" because any action taken by an officer "solely out of self-interest or solely from a desire to harm the plaintiff . . . is *ipso facto* not in the corporation's best interest." *Cress,* 795 N.E.2d at 843 (citing *Mittelman,* 135 Ill. 2d 220, 552 N.E.2d 973, 142 Ill. Dec. 232, *HPI Health Care Servs., Inc.,* 131 Ill. 2d 145, 545 N.E.2d 672, 137 Ill. Dec. 19, and *Certified Mech. Contractors, Inc. v. Wight & Co.,* 162 Ill. App. 3d 391, 515 N.E.2d 1047, 113 Ill. Dec. 888 (Ill. App. Ct. 2d Dist. 1987)). [*15] On questions of state law, federal courts "look to decisions of intermediate appellate courts in the state for persuasive guidance," if "the highest court in the state has not spoken." *Abstract & Title Guar. Co., Inc. v. Chicago Ins. Co.,* 489 F.3d 808, 811 (7th Cir. 2007). This court finds the holding in *Cress* to be supported by Illinois Supreme Court precedent--*see, e.g., HPI Health Care Servs., Inc.,* 545 N.E.2d at 678 (stating in *dicta* that a breach would not be justified if it was induced solely for the purpose of harming the plaintiff "since such conduct would not have been done to further [the corporation's] interests")--and declines the Counterdefendants' invitation to rely on *3Com Corp. v. Elecs. Recovery Specialists, Inc.,* 104 F. Supp. 2d 932, 938 (N.D. Ill. 2000), for the proposition that plaintiffs must separately plead and prove that an induced breach of contract was contrary to the corporation's best interests. Because the factual allegations set forth in the Counterclaim are sufficient to raise the Savaiano's right to relief above the speculative level, the court denies the Counterdefendants' motion to dismiss Count XII.

2. Count XIII - Conspiracy to Commit Tortious Interference [*16] with Contracts

The Savaianos allege in Count XIII of their Counterclaim that, as members of United Labs' Board of Directors, Theodore, Benson, Hoffmeyer, Becker, Wahlbeck, and O'Neill engaged in a common scheme to unlawfully deprive the Savaianos of the benefits of their contracts with United Labs. Specifically, the Savaianos allege that Benson, Hoffmeyer, Becker, Wahlbeck, and O'Neill "voted for and/or supported Theodore's decision to refuse to honor the contracts United Labs entered into with the Savaiano Defendants." (Counterclaim P 155).

As in Count XII, the members of the Board of Directors enjoy a qualified privilege that protects them from liability for any decisions made on behalf of the United Labs in accordance with their business judgment. Furthermore, "a civil conspiracy cannot exist between a corporation's own officers or employees." *Van Winkle v. Owens-Corning Fiberglas Corp.,* 291 Ill. App. 3d 165, 683 N.E.2d 985, 991, 225 Ill. Dec. 482 (Ill. App. Ct. 4th Dist. 1997) (citing *Salaymeh v. InterQual, Inc.,* 155 Ill. App. 3d 1040, 508 N.E.2d 1155, 1158, 108 Ill. Dec. 578 (Ill. App. Ct. 5th Dist. 1987)). This is so because "the acts of an agent are considered the acts of the principal," thereby leaving only one party engaged in the alleged "conspiracy." *Salaymeh,* 508 N.E.2d at 1158. [*17] On the other hand, the intra-corporate conspiracy doctrine does not apply where the agents are alleged to have acted outside the scope of their corporate duties. *See, e.g., Hollinger Int'l, Inc. v. Hollinger, Inc.,* No. 04 C 0698, 2005 U.S. Dist. LEXIS 21305, 2005 WL 589000, at *16 (N.D. Ill. Mar. 11, 2005).

In this case, the Savaianos allege that Theodore acted to "remove[ ] from the Board of Directors any director who disagreed with her positions and/or stood in the way of her ascent to sole CEO of United Labs," and that the remaining members of the Board of Directors were improperly motivated "primarily by the desire to preserve their position and/or employment with United Labs" when they voted to support Theodore. (Counterclaim PP 154-55). In support of this assertion, the Savaianos specifically allege that Donald Savaiano (head of Sales) and Tim Delripple (vice president of Sales) were both fired from their jobs under CEO Theodore's watch, and that Bill Merten resigned from the Board of Directors approximately six months later. (*Id.* P 148). The remaining Board members are alleged to have supported Theodore's decisions out of fear, despite the fact that they did not believe them to be in the best interest of [*18] United Labs. (*Id.* P 154).

The court finds the allegations of the Counterclaim to be sufficient to raise the Savaiano's right to relief above the speculative level. Because the actions of the members of the Board of Directors were allegedly conducted out of self-interest, the court cannot view them as privileged or as the actions of United Labs for purposes of the intra-corporate conspiracy doctrine. The court therefore denies the Counterdefendants' motion to dismiss Count XIII on these grounds.

3. Counts XV and XVI - Tortious Interference with Economic Advantage and Breach of Fiduciary Duty

In Counts XV and XVI of their Counterclaim, the Savaianos allege that United Labs and the Individual Counterdefendants failed to timely produce certain insurance policies to the Savaianos, constituting tortious interference with economic advantage (Count XV) and breach of fiduciary duty (Count XVI). Both counts are based on United Labs' purchase of liability insurance for the Savaianos, pursuant to Article IX, Section 6 of United Labs' By-Laws, which provides:

> [United Labs] may purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of [United Labs] [*19] . . . against any liability asserted against him

Case 1:08-cv-01217    Document 19-3    Filed 05/23/2008    Page 7 of 11

Page 6
2007 U.S. Dist. LEXIS 94034, *

and incurred by him in any such capacity, or arising out of his status as such . . . .

(Dkt. No. 77, Ex. 35 at 24).

On May 15, 2006, the Savaianos allegedly requested from United Labs' counsel copies of all United Labs insurance policies providing officer, director, or fiduciary liability coverage from 1995 to the then-present date. (Counterclaim PP 180, 189). In their Counterclaim, filed October 27, 2006, the Savaianos allege that "United Labs has failed to respond to the letter or produce the requested insurance policies." (*Id.*). However, sometime after the Savaianos filed their Counterclaim, the relevant insurance policies were tendered to the Savaianos by United Labs. (*See* Dkt. No. 131 at 6; Dkt. No. 140 at 7).

The Savaianos allege and argue that they *may be* prejudiced in their ability to obtain coverage under their liability insurance policies, because "[a]s a direct result of United Labs' refusal to produce copies of the relevant insurance policies, the Savaiano Defendants may be unable to provide timely notice to the insurance carrier(s) . . . of their claim for coverage [in this lawsuit]." (Counterclaim PP 181, 190). At no point [*20] in their filings before the court have the Savaianos alleged or reported that they have actually been denied coverage under the relevant insurance policies.

The elements of a claim for tortious interference with prospective economic advantage are: "(1) the existence of a valid business relationship or expectancy; (2) the defendants' knowledge of plaintiff's relationship or expectancy; (3) purposeful interference by the defendants that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship or [results in] termination of the relationship; and (4) damages to plaintiff resulting from such interference." *Dowd & Dowd, Ltd. v. Gleason*, 352 Ill. App. 3d 365, 816 N.E.2d 754, 767, 287 Ill. Dec. 787 (Ill. App. Ct. 1st Dist. 2004) (citing *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 568 N.E.2d 870, 154 Ill. Dec. 649 (Ill. 1991)); *see also Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 693 N.E.2d 358, 371, 230 Ill. Dec. 229 (Ill. 1998) (recognizing the tort's applicability where "the defendant has succeeded in ending the relationship or interfering with the expectancy").

In this case, the Savaianos have failed to allege that the Counterdefendants' interference with the business relationship between the Savaianos and their insurance carrier has actually caused the Savaianos [*21] any harm. Although the Savaianos are not required to set forth each element of their claim in specific detail, their Counterclaim must include sufficient factual allegations so as "to raise a right to relief above the speculative level." *Bell Atlantic*, 127 S. Ct. at 1965. Because the Savaianos have only alleged the existence of potential damages at some future point in time, the court finds that the factual allegations in the Savaiano's Counterclaim do not raise the Savaianos' right to relief above the speculative level, and that the Savaianos have failed to sufficiently set forth a claim for tortious interference with prospective economic advantage.

Similarly, to sustain a claim for breach of fiduciary duty, the Savaianos must prove (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Paul H. Schwendener, Inc. v. Jupiter Elec. Co., Inc.*, 358 Ill. App. 3d 65, 829 N.E.2d 818, 829, 293 Ill. Dec. 893 (Ill. App. Ct. 1st Dist. 2005) (citing *Neade v. Portes*, 193 Ill. 2d 433, 739 N.E.2d 496, 250 Ill. Dec. 733 (Ill. 2000)). The Savaianos have alleged that they "entrusted the handling of the Liability Insurance to the Board of Directors," that "United Labs and the Board of Directors were acting as agents [*22] as intermediaries of the Savaiano Defendants" when they purchased and maintained liability insurance on their behalf, and that "United Labs and the Board of Directors, therefore, had a fiduciary duty to all persons who are or were directors, officers, employees or agents of United Labs." (Counterclaim PP 186-188). The allegations in the Counterclaim also suggest that the Counterdefendants breached their fiduciary duty to the Savaianos when then failed to turnover copies of the relevant insurance policies upon request. (*Id.* PP 188-189). Once again, however, the Savaianos have failed to allege any damages that are not wholly speculative in nature. (*See id.* P 190) ("As a direct result of United Labs' refusal to produce copies of the relevant insurance policies, the Savaiano Defendants *may be* unable to provide timely notice to the insurance carriers . . . of their claim for coverage.") (emphasis added). Because the Savaianos have not alleged that they have suffered any actual harm on account of the Counterdefendants' conduct, the court finds that the Savaianos have failed to adequately allege a cause of action for breach of fiduciary duty.

The Savaianos argue that they have suffered actual [*23] damages, because they incurred attorneys' fees in their efforts to obtain copies of the relevant insurance policies from the Counterdefendants. Under Illinois law, litigation expenses are not considered an appropriate form of damages, unless authorized by statute or provided for in a contractual agreement between the parties. *Grate v. Grzetich*, 373 Ill. App. 3d 228, 867 N.E.2d 577, 579, 310 Ill. Dec. 886 (Ill. App. Ct. 3d Dist. 2007). An exception to this rule applies "where the natural and proximate consequences of a wrongful act have been to involve the plaintiff in litigation *with others*." *Ritter v. Ritter*, 381 Ill. 549, 46 N.E.2d 41, 44 (Ill. 1943) (empha-

sis added); *see also Nat'l Wrecking Co. v. Coleman,* 139 Ill. App. 3d 979, 487 N.E.2d 1164, 1166, 94 Ill. Dec. 287 (Ill. App. Ct. 1st Dist. 1985) (recognizing that the exception applies to "wrongful acts which require litigation with third parties"). In this case, the attorneys' fees allegedly incurred by the Savaianos were not incurred in litigation against a third party (such as the insurance carrier), thus they do not satisfy the damages requirement. Counts XV and XVI are hereby dismissed with prejudice.

### 4. Count XVII - Defamation

In Count XVII of their Counterclaim, the Savaianos allege that United Labs and the Individual [*24] Counterdefendants are liable for certain defamatory statements included in an undated memorandum that was disseminated by United Labs to all of its shareholders, including all participants in the ESOP I and the ESOP II. (Dkt. No. 77, Ex. 38) (the "Memorandum"). The one-page Memorandum, addressed "TO SHAREHOLDERS AND ESOP I AND ESOP II PARTICIPANTS," was signed by Theodore in her capacity as Chairman of the Board of United Labs. (*Id.*). The Memorandum opens by notifying its recipients that, on January 31, 2006, United Labs filed a claim in the Circuit Court of Cook County Illinois, Probate Division, against the Estate of Nicholas Savaiano. The Memorandum goes on to describe the allegations of the probate claim, stating:

> The Claim asserts that "its CEO and Chairman, Decedent [Mr. Savaiano] owed fiduciary duties of loyalty and care to United Labs and its shareholders." The Claim also asserts that Mr. Savaiano breached those duties owed to United Labs and its shareholders. The Claim further asserts that "as trustee of ESOP I and ESOP II, Decedent [Mr. Savaiano] owed fiduciary duties to the beneficiaries of ESOP I and II. Decedent [Mr. Savaiano] breached those duties owed to the beneficiaries [*25] of ESOP I and II."

> The Claim centers around the fairness of "the buyout of the Savaiano family interest in United Labs by ESOP I and II and the spin off of the Zyme-Flow TM Process division to ULI" and a series of corporate acts "in violation of Decedent's [Mr. Savaiano's] duties of loyalty, candor, good faith and honesty, and by engaging in self-dealing against the interests of United Labs and its shareholders" which subsequently followed these transactions. The Claim alleges that as a result of these actions, United Laboratories, Inc. and its shareholders, including the participants of United Laboratories, Inc.'s Employee Stock Ownership Plan and Leveraged Employee Stock Ownership Plan, suffered monetary injury.

(*Id.*). Noting "the relationship between United Labs and the Savaiano family," Theodore described these "revelations" as "painful," while recognizing her fiduciary duty "to protect all shareholders and take action without hesitation when I believe you or the company may have been harmed." (*Id.*).

The Savaianos allege that the language of the Memorandum imputes to them a "want of integrity in the discharge of their duties of office and employment," as it can be inferred from the [*26] Memorandum that the Savaianos--as members of "the Savaiano family" and of the then-current Board of Directors--approved these same transactions for their own benefit. (Counterclaim PP 195-199).

In their motion to dismiss, the Counterdefendants argue that the Memorandum is subject to a qualified privilege and is therefore "not actionable because of the occasion on which or the circumstances under which the statement was made." (Dkt. No. 131 at 9) (citing *Harrel v. Dillards Dept. Stores, Inc.,* 268 Ill. App. 3d 537, 644 N.E.2d 448, 205 Ill. Dec. 892 (Ill. App. Ct. 5th Dist. 1994)). In Illinois, a qualified privilege to a claim of defamation arises in three situations: (1) situations involving an interest of the publisher of the defamatory statement; (2) situations involving an interest of the recipient of the defamatory statement or some other third party; and (3) situations involving a recognized public interest. *Kuwik v. Starmark Star Marketing & Admin., Inc.,* 156 Ill. 2d 16, 619 N.E.2d 129, 135, 188 Ill. Dec. 765 (Ill. 1993). Whether a qualified privilege exists is a question of law for the court to decide, with the defendant bearing the burden of proof. *Kuwik,* 619 N.E.2d at 134. To overcome a qualified privilege once it has been established, a plaintiff must [*27] prove that the defendant either published the defamatory material with an intent to injure the plaintiff or with a reckless disregard of the defamed party's rights. *Id.* at 135-136. Abuse of the privilege is a question of fact for the jury, and can be proven by a defendant's failure "to properly investigate the truth of the matter, limit the scope of the material, or send the material to only the proper parties." *Id.* at 134, 136.

A qualified privilege is an affirmative defense. *Morton Grove Pharm., Inc. v. Nat'l Pediculosis Ass'n, Inc.,* 494 F. Supp. 2d 934, 942 (N.D. Ill. 2007) (citing *Babb v. Minder,* 806 F.2d 749, 753 (7th Cir. 1986)). Generally, a complaint need not anticipate or attempt to defend

Case 1:08-cv-01217    Document 19-3    Filed 05/23/2008    Page 9 of 11

Page 8
2007 U.S. Dist. LEXIS 94034, *

against potential defenses. *Doe v. Smith*, 429 F.3d 706, 709 (7th Cir. 2005). Therefore, unless the complaint affirmatively shows the statement is privileged, "a plaintiff is not required to plead facts demonstrating that a statement is unprivileged." *Myers v. Phillips Chevrolet, Inc.*, No. 04 C 0763, 2004 U.S. Dist. LEXIS 21635, 2004 WL 2403126, at *6 (N.D. Ill. Oct. 26, 2004).

In this case, because the Savaianos have sufficiently plead that Theodore published the Memorandum with an intent to harm the Savaianos, the court [*28] need not determine at this time whether the Memorandum was a privileged communication. In their Counterclaim, the Savaianos allege that "Theodore *as part of her plan* made false and defamatory statements about Nicholas and the Savaiano family (see Counts XVI and XVII of the Counterclaim, *infra*) to all of the employee/shareholders who have benefitted so greatly from Nicholas and Maureen's hard work and generosity to United Labs *in a further effort to sullen the name and image of the founders/founding family of United Labs.*" (Counterclaim P 149; *see also id.* P 192) (emphases added). If the Memorandum was distributed as part of Theodore's alleged plan to exact revenge on the Savaianos (*see* Part 1, *supra*), it would not be considered a privileged communication. Theodore's motivation in composing and sending the Memorandum is a question of fact for the jury. On the face of the Counterclaim, the court finds that the Savaianos have sufficiently set forth a claim for defamation, including allegations to suggest that any qualified privilege that could apply was abused by the Counterdefendants. The court declines to determine whether a qualified privilege applies to the Memorandum at this point [*29] in the proceedings and denies the Counterdefendants' motion to dismiss Count XVII.

5. Count XVIII - False Light Invasion of Privacy

In Count XVIII of their Counterclaim, the Savaianos allege that the Counterdefendants placed the Savaianos in a false light with the publication of the Memorandum. (*See*, Part 4, *supra*). Illinois courts recognize that an invasion of privacy can occur when one person publically places another in a false light. *See Lovgren v. Citizens First Nat'l Bank of Princeton*, 126 Ill. 2d 411, 534 N.E.2d 987, 989-90, 128 Ill. Dec. 542 (Ill. 1989). To sustain a cause of action for false light invasion of privacy, a plaintiff must demonstrate that "(1) he or she was placed in a false light before the public as a result of the defendant's actions; (2) 'the false light in which the plaintiff[ ] was placed would be highly offensive to a reasonable person; and (3) the defendant[ ] acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false." *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 742 N.E.2d 425, 434-35, 252 Ill. Dec. 175 (Ill. App. Ct. 1st Dist. 2000) (quoting *Kirchner v. Greene*, 294 Ill. App. 3d 672, 691 N.E.2d 107, 229 Ill. Dec. 171 (1998)). At issue in the pending Motion to Dismiss is whether [*30] the Savaiano's have alleged that the Memorandum was disclosed "before the public."

According to the Restatement (Second) of Torts, to which Illinois courts have turned for guidance--*see, e.g., Lovgren*, 534 N.E.2d at 989; *Kurczaba*, 742 N.E.2d at 435--publicity "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D cmt. a (1977); *see also* Restatement (Second) of Torts § 652E cmt. a (1977) (applying the same definition of "publicity" to false light invasion of privacy as to public disclosure of private facts). Although "it is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons," "any publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient." Restatement (Second) of Torts § 652D cmt. a (1977).

At this stage of the case, the number of [*31] United Labs shareholders and plan participants to whom the Memorandum was distributed is not clear from the pleadings, although the court infers that the group was likely fairly "large." On the other hand, even where "the public to which the defendant disseminated the materials was not sufficiently large," the existence of a special relationship between the plaintiff and the recipients of the information can be enough to satisfy the public disclosure requirement. *Kurczaba*, 742 N.E.2d at 436-37. Through the special relationship exception, courts have recognized that "a disclosure to a limited number of persons may be just as devastating to a plaintiff as a disclosure to the general public." *Poulos v. Lutheran Soc. Servs. of Ill., Inc.*, 312 Ill. App. 3d 731, 728 N.E.2d 547, 555, 245 Ill. Dec. 465 (Ill. App. Ct. 1st Dist. 2000) (citing *Miller v. Motorola, Inc.*, 202 Ill. App. 3d 976, 560 N.E.2d 900, 903, 148 Ill. Dec. 303 (Ill. App. Ct. 1st Dist. 1990)). Courts do not apply the special relationship exception (or find "public" disclosure) if private information is disclosed only to "those persons who have a natural and proper interest in learning such *true*, albeit highly offensive, private facts." *Poulos*, 728 N.E.2d at 556 n.1. However, this rule applies only to claims [*32] of public disclosure of private facts, and not to claims for false light invasion of privacy. *Id.* In other words, there is no such thing as a right to receive false information. As long as the plaintiff shares a special relationship with those before whom the plaintiff is placed in a false light, the

disclosure will be considered sufficiently "public" to satisfy this element of the tort.

In their Counterclaim, the Savaianos allege that the Memorandum at issue was sent to all of United Labs' shareholders, as well as all participants in the ESOP I and the ESOP II. As former members of United Labs' Board of Trustees, and members of the family responsible for founding and running United Labs, the Savaianos likely enjoyed a special relationship with United Labs' shareholders and employees, such that "the recipients are within the class of individuals who were very important to [the plaintiffs] and if false and offensive information was disclosed to them, [the plaintiffs] could be embarrassed and devastated." *Kurczaba,* 742 N.E.2d at 437. The court finds that the Savaianos have sufficiently alleged the public disclosure aspect of their false light invasion of privacy claim, and denies the [*33] Counterdefendants' motion to dismiss Count XVIII.

6. Counts XIX and XX - Defamation and False Light Invasion of Privacy

Finally, the Savaianos allege that United Labs and the Individual Counterdefendants are liable to the Savaianos for defamation (Count XIX) and false light invasion of privacy (Count XX) in association with certain communications to Barbara Difino [4] on or about August 22, 2006. On that day,

> Barbara Difino was informed by United Labs that there had been a breach in the security system of United Labs that pertains to the complaint that United Labs and Benson had filed against the Savaiano Defendants. United Labs then informed Barbara Difino that as a result of this security breach, and the fact that she is part of the Savaiano family, she would be removed from her position at United Labs and moved to another position where she would not have access to restricted company files.

(Counterclaim P 205). The Savaianos further allege that "[t]he Board of Directors and/or Eric Frazier also suggested to Barbara Difino that the Savaiano Defendants have (whether directly or indirectly) illegally sought to gain access to United Labs' computer systems and internal company files. (*Id.* P 206). [*34] Because they falsely impute the commission of a crime, these statements are alleged to constitute defamation *per se.* (*Id.* PP 207-209). Furthermore, these statements are alleged to have placed the Savaianos in a false light before Barbara Difino. (*Id.* P 210).

4   The court assumes that Barbara Difino is Nicholas Savaiano's sister and that she is married to former United Labs Board of Directors member Robert Difino, a defendant/ counterplaintiff in this case. (*See* Counterclaim P 3) ("Defendant/Counterclaimant Robert G. Difino ('Robert') is an individual residing in Lombard, Illinois. Robert is married to Nicholas' sister.").

The Counterdefendants move to dismiss Count XIX on the grounds that the defamation claim was not plead with sufficient specificity. The Counterdefendants argue that the Savaianos failed to set forth (1) specifically who made the statement to Barbara Difino and (2) the precise statement made, and that their defamation claim fails as a matter of law.

To satisfy the requirements of notice pleading, a plaintiff in federal court must set forth the alleged defamatory words "with some specificity." *Emery v. Ne. Ill. Reg'l Commuter R.R. Corp,* No. 02 C 9303, 2003 U.S. Dist. LEXIS 16403, 2003 WL 22176077, at * 7 (N.D. Ill. Sept. 18, 2003) [*35] (quoting *Betten v. Citibank F.S.B.,* No. 94 C 5460, 1995 U.S. Dist. LEXIS 8924, 1995 WL 387802, at *3 (N.D. Ill. June 28, 1995)); *see also Flentye v. Kathrein,* 485 F. Supp. 2d 903, 919 (2007); *Johnson v. Joliet Junior Coll.,* No. 06 C 5086, 2007 U.S. Dist. LEXIS 27558, 2007 WL 1119215, at *3 (N.D. Ill. Apr. 10, 2007); *Chisholm v. Foothill Capital Corp.,* 940 F. Supp. 1273, 1284 (N.D. Ill. 1996); *Johnson v. C & L,* No. 95 C 6381, 1996 U.S. Dist. LEXIS 7769, 1996 WL 308282, at *6 (N.D. Ill. June 6, 1996); *Pelech v. Klaff-Joss, LP,* 828 F. Supp. 525, 534 (N.D. Ill. 1993). The "signal reason" a plaintiff is required to plead the specific words alleged to be actionable is that "generally knowledge of the exact language used is necessary to form responsive pleadings." *Vantassell-Martin v. Nelson,* 741 F. Supp. 698, 708 (N.D. Ill. 1990) (quoting *Asay v. Hallmark Cards, Inc.,* 594 F.2d 692, 699 (8th Cir. 1979)). On the other hand, although plaintiffs are required to set forth the defamatory language with sufficient detail so as to allow the defendant to formulate an appropriate response, plaintiffs "need not allege the defamatory language verbatim." *Flentye,* 485 F. Supp. 2d 903, 919, 2007 WL 1175576, at *11 (quoting *Emery,* 2003 U.S. Dist. LEXIS 16403, 2003 WL 22176077, at P 7). When proceeding in federal court, a plaintiff's claims of [*36] defamation *per se* are not subject to the heightened pleading standards of Rule 9. *Muzikowski v. Paramount Pictures Corp.,* 322 F.3d 918, 926 (7th Cir. 2003).

In this case, the Savaianos have alleged the nature of the accusation (a criminal breach by the Savaianos of United Labs' security systems through the unauthorized access of United Labs' files and computers), the person to whom the defamatory statements were made (Barbara Difino), and the date on which they were made (on or

about August 22, 2006). Furthermore, the universe of possible speakers is limited to those persons authorized to speak for United Labs, which includes the named individual (Eric Frazier). The Counterdefendants have not argued an inability to respond to these allegations, instead contending that the claim "is critically defective" and therefore fails as a matter of law. (Dkt. No. 131 at 12). Because the court finds that "the alleged defamatory statements are sufficiently identified for [Counterdefendants] to determine whether they are false, whether they constitute defamation, and whether the statements were privileged," *Betten,* 1995 U.S. Dist. LEXIS 8924, 1995 WL 387802, at *3, the court denies the Counterdefendants' motion to dismiss Count [*37] XIX.

The Counterdefendants also argue that Count XX must be dismissed because it does not "show how the alleged statements placed the Savaiano Defendants in a false light." (Dkt. No. 131 at 13). In support of this argument, the Counterdefendants direct the court to the case of *Dubinsky v. United Airlines Master Executive Council,* 303 Ill. App. 3d 317, 708 N.E.2d 441, 236 Ill. Dec. 855 (Ill. App. Ct. 1st Dist. 1999). The court in *Dubinsky* found that a union member's statement that the plaintiff was a "crook" in front of a large group of pilots and their wives merely constituted name-calling and was "a statement of opinion, not objectively verifiable and devoid of factual content." *Dubinsky,* 708 N.E.2d at 451. Unlike the "crook" statement in *Dubinsky,* and like the other actionable statements in that case, the statements made to Barbara Difino described the specific illegal conduct in which the Savaianos were alleged to have participated--namely, an unauthorized and criminal breach of United Labs' security systems in connection with the case filed by United Labs and Benson against the Savaianos--such that these statements were capable of objective verification and could be interpreted by the listener as fact. These statements [*38] constitute more than mere "name-calling" and, as alleged, represented the Savaianos in a false light.

Finally, the Counterdefendants argue that the statements to Barbara Difino were not sufficiently "public," because they were a "limited disclosure" made only within the workplace. The Counterdefendants cite *Jones v. Sabis Educational Systems, Inc.* for the proposition that "no case supports the claim that a statement which is made solely within a plaintiff's workplace community is false light invasion of privacy without some proof that the statement was . . . publicized outside the workplace community to the public at large." (Dkt. No. 131 at 14) (quoting *Jones v. Sabis Educ. Sys., Inc.,* No. 98 C 4252, 1999 U.S. Dist. LEXIS 19449, 1999 WL 1206955, at *8 (N.D. Ill. Dec. 13, 1999)). However, this court notes that the court in *Poulos v. Lutheran Social Services of Illinois* has since sustained a jury verdict for false light invasion of privacy where the defendant's statements were made only to the Chairman of the Board of Trustees for the school at which the plaintiff taught, finding the fact that the Board of Trustees was a "governance body responsible for . . . hiring the principal of the school and overseeing a wide [*39] variety of matters" to be sufficient evidence of a special relationship between the plaintiff and the recipient of the statement. *Poulos,* 728 N.E.2d at 556. In this case, Barbara Difino is both related to the Savaianos and an employee of United Labs (the company for which the Savaianos formerly served as members of the Board of Directors and against which the Savaianos are currently engaged in litigation that was the subject of the alleged statements). The court finds that Barbara Difino and the Savaianos are alleged to have shared a sufficiently "special" relationship, such that the disclosure of false information about the Savaianos to Barbara Difino could have been devastating to the Savaianos. The court therefore denies the Counterdefendants' motion to dismiss Count XX of the Counterclaim.

CONCLUSION

For the reasons stated above, Counterdefendants' Rule 12(b)(6) Motion to Dismiss Counts XII, XIII and XV through XX of the Savaiano Defendants' Counterclaim, (Dkt. No. 131), is granted in part and denied in part. Counts XV and XVI are dismissed with prejudice. All other counts remain pending. The Counterdefendants are to file their Answer to Counts XII, XIII and XVII through XX on or [*40] before January 11, 2008. The case remains set for a report on status at 9:00 a.m. on January 17, 2008 to discuss further scheduling in this case.

/s/ James F. Holderman

JAMES F. HOLDERMAN

Chief Judge, United States District Court

Date: December 21, 2007