## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MICHAEL LAUGHLIN and  <br> NICOLE LAUGHLIN, <br><br> Plaintiffs, <br><br> v. <br><br> BORDWOK ENTERPRISES, LLC, <br> A Georgia limited liability company and <br> DANIEL LUCAS, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) No.  08 C 1217 <br> ) <br> ) Judge Der-Yeghiayan <br> ) <br> ) Magistrate Judge Cox <br> ) <br> ) <br> ) |
| BORDWOK ENTERPRISES, LLC, <br> A Georgia limited liability company, <br><br> Counter-plaintiff, <br><br> v. <br><br> MICHAEL LAUGHLIN and <br> NICOLE LAUGHLIN <br><br> Counter-defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

### MICHAEL AND NICOLE LAUGHLIN'S ANSWER & AFFIRMATIVE DEFENSES TO BORDWOK ENTERPRISES, LLC'S COUNTERCLAIM

Plaintiffs/Counter-defendants, MICHAEL LAUGHLIN and NICOLE LAUGHLIN (collectively, "**Plaintiffs**"), by and through their attorneys, Wildman, Harrold, Allen & Dixon LLP, state as follows for their Answer and Affirmative Defenses to Defendant/Counter-plaintiff BORDWOK ENTERPRISES, LLC's ("**Bordwok**") Counterclaim:

### PARTIES

1.      Bordwok is a Georgia Limited Liability Company with a principal place of business in Fulton County, Georgia.

**ANSWER:**     Plaintiffs admit the allegations in paragraph 1.

2.      Mr. Laughlin and Ms. Laughlin are residents of Chicago, Illinois.

**ANSWER:**   Plaintiffs admit the allegations in paragraph 2.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this District, and property that is the subject of the action is located in this District.

**ANSWER:**   Plaintiffs admit that this Court has jurisdiction over this action and that venue is proper. Plaintiffs deny the remaining allegations contained in Paragraph 3.

## BACKGROUND FACTS

4.      Bordwok engages in the business of real estate investment and development and owns and operates a number of other companies that engage in the business of real estate investment and development.

**ANSWER:**   Mr. Laughlin has been advised by Bordwok that he is no longer a Member of the company; therefore, Plaintiffs have insufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 4.

5.      Certain members of Bordwok purchase and finance pieces of real property.

**ANSWER:**   Mr. Laughlin has been advised by Bordwok that he is no longer a Member of the company; therefore, Plaintiffs have insufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 5.

6.      Bordwok enters into agreements with its members whereby Bordwok pays all closing costs, other costs, and debt service with respect to these purchases, and all profits are received by Bordwok.

**ANSWER:**   Mr. Laughlin has been advised by Bordwok that he is no longer a Member of the company; therefore, Plaintiffs have insufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 6.

7.      Further, pursuant to these agreements, Bordwok pays for the costs of renovating the pieces of real property purchased by its members and all other costs.

**ANSWER:**   Mr. Laughlin has been advised by Bordwok that he is no longer a Member of the company; therefore, Plaintiffs have insufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 7.

8.   Further, pursuant to these agreements, when the renovations are complete, the properties are sold and the profits are remitted to Bordwok.

**ANSWER:**   Mr. Laughlin has been advised by Bordwok that he is no longer a Member of the company; therefore, Plaintiffs have insufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 8.

9.   Bordwok has engaged in its real estate investment and development business in Chicago through Bordwok Development, LLC, as well as through other related entities.

**ANSWER:**   Plaintiffs admit that Bordwok has engaged in its real estate investment and development business in Chicago through Bordwok Development, LLC.  Further answering, Plaintiffs have insufficient knowledge or information to form a belief as to the truth of the allegations concerning Bordwok's activities through "other related entities," as that term is vague and undefined.  Plaintiffs deny the remaining allegations in paragraph 9.

10.   Bordwok is the sole member of Bordwok Development, LLC.

**ANSWER:**   Mr. Laughlin has been advised by Bordwok that he is no longer a Member of the company; therefore, Plaintiffs have insufficient knowledge or information to form a belief as to the truth of. the allegations in paragraph 10.

11.   Mr. Laughlin is a former Member and Manager of Bordwok.

**ANSWER:**   Plaintiffs admit that Mr. Laughlin has been advised by Mr. Lucas that he has been terminated as a Member of Bordwok, but deny the legality and efficacy of any such action..  Further answering, Plaintiffs have insufficient knowledge or information to form a belief as to the truth of the allegations concerning Mr. Laughlin's alleged role as a "Manager," as that

term is vague and undefined.  Plaintiffs deny any remaining allegations contained in Paragraph 11.

12. In or about January, 2006, Bordwok identified a piece of real property located at 4317 North Damen Avenue, Chicago, Illinois ("Damen House") for purchase and renovation.

**ANSWER:**   Plaintiffs deny the allegations in Paragraph 12.

13. Pursuant to an agreement with Bordwok, Mr. Laughlin obtained financing for the purpose of converting the Damen House (a two-flat apartment) into a single-family residence. Pursuant to the agreement, Bordwok paid all closing costs for the purchase of the Damen House.

**ANSWER:**   Plaintiffs deny the allegations in paragraph 13.

14. Also, pursuant to this agreement, Bordwok paid the monthly mortgage taken out on the Damen House by Mr. Laughlin, as well as all other expenses associated with the Damen House, including all taxes, insurance, and utilities.

**ANSWER:**   Plaintiffs deny the allegations in paragraph 14.

15. Finally, pursuant to this agreement, Bordwok and Mr. Laughlin agreed that the Damen House would be sold following the completion of the renovations with all profits to go to Bordwok.

**ANSWER:**   Plaintiffs deny the allegations in paragraph 15.

16. Subsequent to the purchase of the Damen House, Mr. Laughlin discussed with Mr. Lucas the possibility of purchasing all rights to the Damen House from Bordwok so that he could use the Damen House as a residence for his family.

**ANSWER:**   Plaintiffs admit that, subsequent to the purchase of the Damen House, Mr. Mr. Lucas proposed to Mr. Laughlin that Plaintiffs could move into the Damen House as their residence.  Plaintiffs deny any remaining allegations contained in Paragraph 16.

17. Mr. Laughlin had numerous discussions with Bordwok regarding different potential agreements that would permit Mr. Laughlin to purchase the rights to the Damen House.

**ANSWER:**   Plaintiffs deny the allegations in paragraph 17.

18. Mr. Laughlin represented to Bordwok that he recognized that he could not assume residency in the Damen House without properly compensating Bordwok.

**ANSWER:** Plaintiffs admit that, like all of the other Bordwok-related real estate ventures in Chicago, Mr. Laughlin would share with Bordwok in the profits realized from the sale of the Damen House. Plaintiffs deny any remaining allegations contained in Paragraph 18.

19. Bordwok informed Mr. Laughlin that he and his family could move into the Damen House and use it as their personal residence only if Mr. Laughlin paid to Bordwok consideration equal to $200,000.00 plus all amounts that Bordwok invested with respect to debt service and other expenses associated with the renovation.

**ANSWER:** Plaintiffs deny the allegations in paragraph 19.

20. Bordwok specifically informed Mr. Laughlin that he should not move into the Damen House unless and until he had obtained financing so that he could properly compensate Bordwok as the parties had discussed.

**ANSWER:** Plaintiffs deny the allegations in paragraph 20.

21. Mr. Laughlin agreed to these terms.

**ANSWER:** Plaintiffs deny the allegations in paragraph 21.

22. Mr. Laughlin and his family moved into the Damen House in approximately October, 2007 without having obtained financing as the parties had discussed. Acting in good faith and in reliance on Mr. Laughlin's promises to compensate Bordwok, Bordwok paid the debt service costs on the Damen House through February, 2008.

**ANSWER:** Plaintiffs admit that Mr. Laughlin and his family moved into the Damen House in approximately October 2007. Plaintiffs deny the remaining allegations of paragraph 22.

23. However, despite the fact that his family had moved into the Damen House and was treating it as their personal residence, Mr. Laughlin refused to compensate Bordwok for the lost profit or the amounts invested by Bordwok for debt service and other expenses associated with the renovation of the Damen House as agreed.

**ANSWER:** Plaintiffs deny the allegations in paragraph 23.

24. Bordwok has paid approximately $105,000.00 in carrying costs for the Damen House and approximately $48,000.00 in expenses associated with the renovation.

**ANSWER:** Plaintiffs have insufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 24.

5

25. After Mr. Laughlin moved into the Damen House, Bordwok requested on numerous occasions that Mr. Laughlin enter into a written agreement with Bordwok to resolve the issues raised by Mr. Laughlin's unauthorized acts.

**ANSWER:** Plaintiffs deny the allegations in paragraph 25.

26. Mr. Laughlin refused to accept any of the multiple proposals made by Bordwok, and began acting in an increasingly uncooperative and evasive manner towards Bordwok.

**ANSWER:** Plaintiffs deny the allegations in paragraph 26.

27. Indeed, while still a Manager of Bordwok, Mr. Laughlin acted intentionally to harm Bordwok.

**ANSWER:** Plaintiffs deny the allegations in paragraph 27.

28. For example, Mr. Laughlin usurped a corporate opportunity of Bordwok by moving into the Damen House and refusing to compensate Bordwok for the lost profit or lost expenses.

**ANSWER:** Plaintiffs deny the allegations in paragraph 28.

29. Mr. Laughlin also disregarded company policies, refused to provide financial documents in his possession to Bordwok upon request that were necessary for Bordwok to conduct its business, refused to follow instructions from the General Manager, and took other acts detrimental to Bordwok's best interests.

**ANSWER:** Plaintiffs deny the allegations in paragraph 29.

30. When Bordwok requested that Mr. Laughlin pay Bordwok to compensate Bordwok for lost profits and the expenses related to the Damen House, Mr. Laughlin and his wife filed this lawsuit against Bordwok and its General Manager.

**ANSWER:** Plaintiffs admit that they filed this lawsuit. Plaintiffs deny the remaining allegations of paragraph 30.

## COUNT I

## BREACH OF FIDUCIARY DUTY

## (AGAINST MICHAEL LAUGHLIN)

31. Bordwok incorporates paragraphs 1 through 30 of its counterclaim.

**ANSWER:** Plaintiffs incorporate by reference their answers to paragraphs 1 through 30 and restate those answers as their answer to this paragraph 31 as if fully set forth herein.

6

32. As a Manager of Bordwok, Mr. Laughlin owed Bordwok a duty to act with the utmost good faith and loyalty with respect to Bordwok.

**ANSWER:** Mr. Laughlin admits only those allegations imposed upon him by law.

33. By moving into the Damen House and by residing in the Damen House without authorization and without compensating Bordwok, Mr. Laughlin breached his fiduciary duties to Bordwok.

**ANSWER:** Mr. Laughlin denies all allegations contained in paragraph 33, including the implication that he engaged in the acts alleged therein.

34. By failing to provide requested financial documents and records to Bordwok, by commingling company assets with his own assets, and through other acts and omissions that were detrimental to Bordwok's best interests, Mr. Laughlin breached his fiduciary duties to Bordwok.

**ANSWER:** Mr. Laughlin denies all allegations contained in paragraph 34, including the implication that he engaged in the acts alleged therein.

35. Mr. Laughlin's breaches of his fiduciary duties have injured Bordwok and impaired its ability to conduct its business. Bordwok suffered these injuries in the State of Georgia.

**ANSWER:** Mr. Laughlin denies the allegations in paragraph 35.

36. Bordwok is entitled to recover all damages from Mr. Laughlin that have been caused by the breaches of his duties. To date, Bordwok has suffered damages as a result of Mr. Laughlin's breaches of his fiduciary duties in an amount not less than $300,000.00.

**ANSWER:** Mr. Laughlin denies the allegations in paragraph 36.

## COUNT II

## PROCUREMENT OF BREACH OF FIDUCIARY DUTY

## (AGAINST NICOLE LAUGHLIN)

37. Bordwok incorporates paragraphs 1 though 36 of its counterclaim.

**ANSWER:** Plaintiffs incorporate by reference their answers to paragraphs 1 through 36 and restate those answers as their answer to this paragraph 37 as if fully set forth herein.

38. Ms. Laughlin knew of the fiduciary relationship between Mr. Laughlin and Bordwok.

**ANSWER:** Ms. Laughlin admits that she knew Mr. Laughlin was a Member of Bordwok.  Ms. Laughlin denies any remaining allegations contained in paragraph 38.

39. Ms. Laughlin, acting through advice, counsel, persuasion, or command, procured Mr. Laughlin to breach his fiduciary duties to Bordwok, with the malicious intent of injuring Bordwok and/or benefiting herself and Mr. Laughlin.

**ANSWER:** Ms. Laughlin denies the allegations in paragraph 39.

40. Bordwok suffered injury as a result of Ms. Laughlin's acts of procuring the breaches of Mr. Laughlin's fiduciary duties to Bordwok.

**ANSWER:** Ms. Laughlin denies the allegations in paragraph 40.

41. Bordwok is entitled to recover from Ms. Laughlin all damages caused by the breaches of fiduciary duty that she intentionally procured.  To date, Bordwok has suffered damages as a result of Mr. Laughlin's breaches of his fiduciary duties in the amount not less than $300,000.00.

**ANSWER:** Ms. Laughlin denies the allegations in paragraph 41.

## COUNT III

## UNJUST ENRICHMENT

## (AGAINST MICHAEL LAUGHLIN AND NICOLE LAUGHLIN)

42. Bordwok incorporates paragraphs 1 through 41 of its counterclaim.

**ANSWER:** Plaintiffs incorporate by reference their answers to paragraphs 1 through 41 and restate those answers as their answer to this paragraph 42 as if fully set forth herein.

43. The Laughlins have been living in the Damen House and treating it as their personal residence despite the fact that it is a Bordwok project.

**ANSWER:** Plaintiffs admit that they have been living in the Damen House.  Plaintiffs deny the remaining allegations contained in paragraph 43.

44. Mr. Laughlin represented to Bordwok that they would assume residency of the Damen House only if Bordwok was paid $200,000.00 plus all amounts invested by Bordwok with respect to the Damen House.

**ANSWER:** Plaintiffs deny the allegations in paragraph 44.

45. In reliance upon the original agreement with Mr. Laughlin and the subsequent representations by Mr. and Ms. Laughlin, Bordwok paid 1) all closing costs with respect to the Laughlins' purchase of the Damen House; 2) paid approximately $105,000.00 in mortgage payments on behalf of the Laughlins; and 3) paid approximately $48,000.00 in expenses associated with the renovation of the Damen House.

**ANSWER:** Plaintiffs admit Bordwok made certain payments related to the Damen House pursuant to an agreement with Plaintiffs. Plaintiffs deny the remaining allegations in paragraph 45.

46. Contrary to their representations, the Laughlins assumed residency of the Damen House without paying any compensation to Bordwok.

**ANSWER:** Plaintiffs deny the allegations in paragraph 46.

47. Accordingly, the Laughlins have unjustly retained benefits to Bordwok's detriment, and their retention of such benefits violates fundamental principles of justice, equity, and good conscience.

**ANSWER:** Plaintiffs deny the allegations in paragraph 47.

48. As a result of the foregoing, Bordwok is entitled to recover damages from the Laughlins in the amount not less than $300,000.00.

**ANSWER:** Plaintiffs deny the allegations in paragraph 48.

## COUNT IV

## PROMISSORY ESTOPPEL

49. Bordwok incorporates paragraphs 1 through 48 of its Counterclaim.

**ANSWER:** Plaintiffs incorporate by reference their answers to paragraphs 1 through 48 and restate those answers as their answer to this paragraph 49 as if fully set forth herein.

50. At the time the Laughlins purchased the Damen House, Bordwok paid for the closing costs and debt service for the purchase based upon the promises of Mr. Laughlin that the Damen House would be renovated and sold with all profits to go to Bordwok.

**ANSWER:**   Plaintiffs admit Bordwok made certain payments related to the Damen House pursuant to an agreement with Plaintiffs.  Plaintiffs deny the remaining allegations in paragraph 50.

51.   When Mr. Laughlin confirmed that his family would like to purchase and move into the Damen House, he promised Bordwok that Bordwok would receive at least $200,000.00 plus any and all costs paid by Bordwok with respect to the Damen House.

**ANSWER:**   Plaintiffs deny the allegations in paragraph 51.

52.   Based upon these representations, Bordwok continued to pay for the debt service for the Damen House.

**ANSWER:**   Plaintiffs deny the allegations in paragraph 52.

53.   Mr. Laughlin made the above promises with the intention that Bordwok rely upon the promises to Bordwok's detriment.

**ANSWER:**   Plaintiffs deny the allegations in paragraph 53.

54.   Bordwok in fact relied upon Mr. Laughlin's promises to its detriment.

**ANSWER:**   Plaintiffs deny the allegations in paragraph 54.

55.   Injustice can only be avoided through the enforcement of Mr. Laughlin's promises.

**ANSWER:**   Plaintiffs deny the allegations in paragraph 55.

56.   As a result of the foregoing, Bordwok is entitled to recover damages from Mr. Laughlin in an amount not less than $300,000.00.

**ANSWER:**   Plaintiffs deny the allegations in paragraph 56.

WHEREFORE, Plaintiffs deny any and all liability to Bordwok on its Counterclaim, and demand that Bordwok's Counterclaim against them be dismissed with prejudice and that judgment be entered in Plaintiffs' favor and against Bordwok on all counts of its Counterclaim.

Plaintiffs demand trial by jury on all counts so triable.

## AFFIRMATIVE DEFENSES

For their Affirmative Defenses to Defendants' Counterclaim, Plaintiffs state in the alternative as follows:

### FIRST AFFIRMATIVE DEFENSE

Defendants' Counterclaim fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Defendants unreasonably delayed in bringing these claims against Plaintiffs in a way which prejudiced Plaintiffs' rights and, therefore, Defendants' claims are barred by laches.

### THIRD AFFIRMATIVE DEFENSE

Defendants have failed to mitigate any alleged damages they claim to have incurred as a result of Plaintiffs' conduct alleged in the Counterclaim.

### FOURTH AFFIRMATIVE DEFENSE

Defendants' claims are barred by waiver.

### FIFTH AFFIRMATIVE DEFENSE

Defendants' claims are barred by estoppel.

### SIXTH AFFIRMATIVE DEFENSE

Defendants' claims are barred by unclean hands.

### SEVENTH AFFIRMATIVE DEFENSE

Defendants' claims are barred by lack of consideration.

### EIGHTH AFFIRMATIVE DEFENSE

Defendants' claims are barred by set-off and/or recoupment.

WHEREFORE, Plaintiffs deny any and all liability to Bordwok on its Counterclaim, and demand that Bordwok's Counterclaim against them be dismissed with prejudice and that judgment be entered in Plaintiffs' favor and against Bordwok on all counts of its Counterclaim.

Plaintiffs demand trial by jury on all counts so triable.


Dated: May 29, 2008                                    MICHAEL LAUGHLIN and NICOLE LAUGHLIN



                                                       By:   /s/ Martin D. Snyder                    _
                                                               One of their attorneys


John S. Letchinger
Martin D. Snyder
Megan C. Millirons
WILDMAN, HARROLD, ALLEN & DIXON LLP
225 West Wacker Drive
Chicago, Illinois  60606-1229
(312) 201-2000
Facsimile:  (312) 201-2555

*Attorneys for Plaintiffs/Counter-defendants*
  *Michael & Nicole Laughlin*

**CERTIFICATE OF SERVICE**

       The undersigned certifies that he electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and also certifies that the document is being served on the following persons in compliance with CM/ECF requirements which generate service through the Court's electronic filing system, or, where appropriate, via U.S. Mail delivery from 225 West Wacker Drive, Chicago, Illinois, postage prepaid, on May 29, 2008:

Martin B. Carroll, Esq.
Josh Goldberg, Esq.
Fox, Hefter, Swibel, Levin & Carroll, LLP
200 West Madison Street
Chicago, Illinois 60606

                              /s/ Martin Snyder
                              Martin D. Snyder,
                              Attorney at Law